**Francis H. WAGNER, Plaintiff,**

v.

**LEHMAN BROTHERS KUHN LOEB, INCORPORATED and Stuart Travis, Defendants.**

**No. 83 C 509.**

United States District Court, N.D. Illinois, E.D.

Oct. 26, 1987.

A. Denison Weaver, Chicago, Ill., for plaintiff.

Michael W. Coffield and David Carden, Coffield, Ungaretti, Harris and Slavin, Chicago, Ill., for defendant Lehman Bros.

Richard J. Hoskins, Schiff, Hardin and Waite, Chicago, Ill., for defendant Travis.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This case is a securities action brought by Francis H. Wagner ("Wagner") against Shearson Lehman Brothers, Inc. ("Lehman") and Stuart Travis ("Travis") to recover losses incurred by Wagner during the time Travis was employed by Lehman as a registered representative and acting as a broker for Wagner. In a Memorandum Opinion and Order dated June 19, 1986, the Court disqualified Wagner's counsel and denied Wagner's motion for certification of a plaintiff class. *Wagner v. Lehman Bros. Kuhn Loeb, Inc.*, 646 F.Supp. 643 (N.D.Ill.1986).

Presently pending before the Court are two motions. The first is a motion brought pursuant to Fed.R.Civ.P. 25 by the Administratrix of Wagner's estate, his widow Norma Wagner, to substitute into the case as party plaintiff. The second motion is also brought by Wagner's Administratrix and asks that her attorney be permitted access to the large amount of material pertaining to the motion to disqualify that was filed under seal with the Clerk of Court. The Court will address these motions seriatim.

## II. MOTION TO SUBSTITUTE AS PARTY PLAINTIFF

■ Mrs. Wagner's motion to substitute as plaintiff is straightforward and would no doubt be considered as routine in most, if not all, other cases. In the instant case, however, defendant Lehman has objected to the substitution of Mrs. Wagner until such time as she obtains the specific approval of the Probate Division of the Circuit Court of Cook County, Illinois, to prosecute this action on behalf of her husband's estate. Lehman argues that this Court should direct Mrs. Wagner to seek such approval from the probate court before Mrs. Wagner commits the assets of the estate to the continued prosecution of the case.[1]

Lehman admits that Mrs. Wagner's "substitution in this action as her husband's legal representative is technically proper." (Lehman August 4, 1986, Memorandum at 8). Even so, Lehman insists that the Court should impose an added procedural step on Mrs. Wagner before she can be substituted pursuant to Rule 25. Mrs. Wagner responds that this Court should not interfere with how the state probate court conducts its affairs and that there is no basis for imposing additional procedural requirements on Mrs. Wagner in this case.

The Court agrees with Mrs. Wagner and rejects all of Lehman's arguments. None of the "authorities" relied upon by Lehman support its arguments. In fact, the primary authority relied upon by Lehman, *Hamilton v. Nielsen*, 678 F.2d 709 (7th Cir.1982), suggests that the Court lacks subject-matter jurisdiction to act as Lehman desires. It is a well established principle of federal jurisdiction that federal courts do not have jurisdiction to "interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256

(1946); *Hamilton v. Nielson*, 678 F.2d, at 710; *Rice v. Rice Foundation*, 610 F.2d 471, 474–478 (7th Cir.1979). The Court holds that requiring Mrs. Wagner to obtain some sort of preliminary approval from the state probate court would constitute interference with the state probate proceedings, and therefore, is beyond this Court's subject-matter jurisdiction. Even if the Court had the *power* to order Mrs. Wagner to obtain the extraordinary approval of the state probate court to continue with this action, the Court would not do so in the instant case. Lehman has presented no evidence that there are any irregularities taking place in the probate proceedings, much less irregularities warranting the novel intervention Lehman requests.

The motion of Norma Wagner, Administratrix of the estate of her husband Francis H. Wagner, to substitute as party plaintiff in this action is granted.

## III. MOTION FOR ACCESS TO MATERIAL

The second issue before the Court originated with a motion by Mrs. Wagner (now "the plaintiff") for access to the large amount of material that has been filed under seal in this case. At the July 18, 1986, hearing on this motion, counsel for Lehman opposed the plaintiff's motion and argued that successor counsel should have to develop the case independently of the work performed by the disqualified counsel. The Court ordered both sides to brief the question of what access the plaintiff's new counsel can have to the material generated to date in this case, and whether successor counsel can consult with disqualified counsel.

Not surprisingly, the parties have taken positions that are at polar opposites from one another. The plaintiff argues that her new counsel should have unlimited access to the voluminous discovery material and

---

1. During the initial hearing on Mrs. Wagner's motion, her attorney was uncertain whether Mrs. Wagner was simply seeking to substitute herself as plaintiff in her representative capacity as Administratrix, or whether she was also attempting to assert personal claims of her own

against the defendants. (July 18, 1986, Transcript at 4–6). It is now clear that Mrs. Wagner seeks substitution as plaintiff in her representative capacity only. (Plaintiff's August 29, 1986, Memorandum in Support at 4–5).

work product of disqualified counsel, and that he should be free to consult with disqualified counsel. Lehman argues that successor counsel's access to discovery material and work product should be limited to Wagner's trading statements, and that successor counsel should be prohibited from consulting with disqualified counsel. It is Lehman's position that the plaintiff must be placed back in the position her husband found himself prior to Travis' first phone call and that she and her new counsel must evaluate the viability of the estate's claim against the defendants from that perspective. Lehman would wish away all that transpired between November 22, 1982, and today.[2]

### A. Legal Standards

The precise issue before the Court is what access the substitute plaintiff and her new counsel should be permitted to have to the disqualified counsel's work product and to the other material generated in this action prior to the disqualification. Unfortunately, neither the Court, nor the parties, have found a case addressing this issue in a factual context similar to the instant case.

Lehman relies upon the following cases in support of its arguments: *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459 (Fed. Cir.1984); *First Wisconsin Mortgage Trust v. First Wisconsin Corporation*, 584 F.2d 201 (7th Cir.1978) ("First Wisconsin"); *I.B.M. Corp. v. Levin*, 579 F.2d 271 (3rd Cir.1978); *Cord v. Smith*, 338 F.2d 516 (9th Cir.1964); *Realco Services, Inc. v. Holt*, 479 F.Supp. 867 (E.D.Penn.1979); and *E.F. Hutton & Company v. Brown*, 305 F.Supp. 371 (S.D.Texas 1969). All six cases are distinguishable from the instant case because all six concern disqualification due to dual representation. In all of these cases the attorneys whose conduct was at issue had represented both sides of the lawsuit. As discussed more fully in subpart B below, no such dual representation was involved here. *EZ Paintr Corp. v. Padco, Inc., I.B.M. Corp. v. Levin, Cord v. Smith,* and *E.F. Hutton & Company v. Brown* also lack persuasive force because they

contain little, if any, discussion of the specific issue here—access to pre-disqualification material. *Realco Services, Inc. v. Holt* has no value whatsoever because that court specifically reserved the question of whether the disqualified counsel's work product could be made available to the substitute counsel. *Id.*, 479 F.Supp., at 880.

The plaintiff relies upon the following additional cases in support of her arguments: *Meat Price Investigators Association v. Spencer Foods*, 572 F.2d 163 (8th Cir.1978); *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2nd Cir. 1977); and *W.T. Grant Co. v. Haines*, 531 F.2d 671 (2nd Cir.1976). Two of the three cases, *Meat Price Investigators Association v. Spencer Foods* and *W.T. Grant Co. v. Haines*, are completely distinguishable because in both cases the appellate court affirmed the *denials* of the disqualification motions by the district courts. Because there was no disqualification, the issue of new counsel's access did not arise. *Fund of Funds, Ltd. v. Arthur Andersen & Co.* is distinguishable because it is also a dual representation case. And, its discussion of the specific issue of access to pre-disqualification material is too limited to give it persuasive force in other contexts.

■ Ironically, *First Wisconsin*, the only cited case which contains an exhaustive analysis of the access issue, is relied upon by both the plaintiff and Lehman. As explained below, the Court also finds that the principles announced in *First Wisconsin* govern the issue in the instant case.

The issue before the Seventh Circuit in *First Wisconsin* was relatively narrow:

[t]he ultimate, and apparently first impression, issue in this appeal, stated as simply as possible is whether, when attorneys are judicially determined to have been disqualified to represent a client because of prior simultaneous representation of that client's adversary in litigation, the written product of lawyer work performed during the period of disqualification may be made available to successor counsel.

---

2. In recognition of the difficulties engendered by Mr. Wagner's death, Lehman has offered to allow successor counsel to review *portions* of Wagner's deposition transcript.

*Id.*, 584 F.2d, at 202 (footnote omitted). As with the other cases cited by the parties, the misconduct in *First Wisconsin* which led to the disqualification was dual representation. Unlike those other cases, however, the *First Wisconsin* decision announces several broad principles which the Court holds are applicable to the instant case.

The first principle from *First Wisconsin* is that the district court must use a flexible, case-by-case approach in deciding what access successor counsel may have to pre-disqualification work. "In our opinion, such an automatic or per se equation of denial of the work product to the disqualification of representation is not good law and the application of such a rule without more requires reversal." *Id.*, 584 F.2d, at 204.

The second principle is that the district court must take account of the fault of the client when ruling on successor counsel access.

This is not a matter of penalty against the lawyer. The lawyer's penalty is the disqualification. The penalty from not having the work product made available to substitute counsel is against the client. The rule as here laid down by the district court would destroy the work done by disqualified counsel irrespective of any fault on the part of the party litigant.

*Id.*, 584 F.2d, at 205.

The third principle is that the district court must focus on the specific injury to the movant caused by the disqualifying conduct and formulate a remedy which removes any improper advantage that has been, or might be, gained over the movant. *Id.*, 584 F.2d, at 207, 209 and 211 n. 6.

The fourth principle is that the district court must treat the issue of disqualification and the issue of access to pre-disqualification material separately.

The Court believes that by applying these four principles to the facts of this case it can fashion an appropriate order governing successor counsel's access to and use of the pre-disqualification material. First, however, it is necessary to review the reasons Steven Gomberg and Ronald Kane were disqualified as Wagner's counsel.

## B. The Disqualification of Prior Counsel

 It is not possible to fashion an order governing successor counsel's access to pre-disqualification material without reviewing the reasons Steven Gomberg and Ronald Kane were disqualified. The facts and circumstances of Gomberg and Kane's disqualification were exhaustively explored in the Court's June 19, 1986, Memorandum Opinion and Order. To the extent possible the Court will not repeat here findings made in the earlier opinion. The Court will instead briefly summarize Gomberg and Kane's misconduct and discuss the nature of the improper advantage over Lehman that they sought to attain.

Gomberg was disqualified for two main reasons: 1) he participated with Wagner in an attempt to secure evidence from Travis that was detrimental to Lehman by offering money to Travis in exchange for favorable testimony; and 2) he participated in discussions with Travis without Travis' counsel being present and without obtaining Travis' counsel's permission. Gomberg attained an improper advantage over Lehman by participating in the creation of inherently unreliable evidence consisting primarily of Travis' testimony. Wagner and Gomberg acted together in this endeavor to obtain Travis' testimony to use against Lehman.

Kane was disqualified because the Court determined that while he was an employee of the Securities and Exchange Commission he had substantial responsibility for an SEC investigation into Travis and Lehman's activities which form the subject matter of this lawsuit. The improper advantage which Kane attained over the defendants because of his improper conduct was twofold: 1) the Court found that Kane had access to confidential information disclosed by Lehman to the SEC in the course of the SEC investigation; and 2) the Court found that Kane used his contacts in the government and particularly in the SEC to encourage further investigations of Travis and Lehman in an effort to obtain specific

evidence to use against the defendants in this case.

The Court believes that the misconduct of Wagner, Gomberg, and Kane had one primary purpose—the *creation* of evidence to use against the defendants in this case. Wagner and Gomberg's goal was to secure extremely damaging testimony from Travis to use against Travis and Lehman. Kane's goal was to encourage further governmental investigation of Travis and Lehman to aid Wagner's case. Kane also used his government connections to obtain specific evidentiary material that was denied Wagner by other means. The Court concludes that the nature of the improper advantage that Wagner, Gomberg and Kane attained over the defendants was evidentiary. Certain specific and identifiable evidentiary items were created by the misconduct that resulted in Gomberg and Kane's disqualification. If the Court permitted the substitute plaintiff and her counsel to freely use this ill-gotten evidence against the defendants, the Court would be allowing the improper advantage over the defendants attained through Wagner, Gomberg and Kane's misconduct to continue. The Court's task is to create a remedy to fit the facts of this case in accordance with the principles discussed in subpart A above.

### C. Application of *First Wisconsin* Principles to this Case

To begin with, the Court rejects Lehman's contention that successor counsel must be denied access to and use of virtually everything that has been generated during the pendency of this case. This "back to square one" approach does not comport with a separate and independent examination of the access to pre-disqualification material issue. Rather than making the separate analysis that is called for, Lehman simply argues that everything that has occurred in this case followed from Wagner's initial phone conversation with Travis and that all of it is therefore tainted by the original misconduct. If the Court were to accept Lehman's arguments, it would be imposing the type of per se bar that was disapproved by *First Wisconsin*. The Court does not accept Lehman's theory of taintedness because it does not adequately focus on the fault that is properly attributable to Wagner himself, or on the improper advantage gained over the defendants.

As noted, Lehman has failed to focus on the nature of the improper advantage that Wagner and his counsel attained. The improper advantage does not follow from the mere fact that this lawsuit was filed. The Court has already rejected Lehman's motion to dismiss this action as a Fed.R.Civ.P. 11 sanction. *Wagner*, 646 F.Supp., at 662–663. If the Court were to accept Lehman's contention and bar the plaintiff and successor counsel from access to and use of all of the material generated in this case, the Court would in essence be dismissing this action without prejudice. None of the authorities cited by Lehman come close to validating such a result.

The Court also rejects the plaintiff's contention that she and her new counsel should be permitted to proceed as if the disqualification had never occurred. The plaintiff's approach completely fails to take proper account of the fault on the part of Wagner, and fails to recognize the unfair disadvantages that Wagner, Gomberg and Kane's misconduct has left the defendants to face.

As discussed above in subpart B, the crux of the improper advantage that the plaintiff has over the defendants is the existence of evidence that would not have existed if the misconduct on the part of Wagner, Gomberg and Kane had not occurred. The best way for the Court to remove the improper advantage facing the defendants is for the Court to remove this evidence from the case. Unfortunately, this is easier said than done. The Court's June 19, 1986, Memorandum Opinion and Order fully discloses the nature of the evidence the creation of which led to the disqualification of Gomberg and Kane. Because of this fact, even if it were possible to do,[3] the Court sees no point trying to

---

**3.** One insurmountable problem with physically excising the material is in deciding who would

do it. It would not be proper for the defendants to have access to disqualified counsel's work

physically excise the improper evidence from the material to which successor counsel may have access. Instead, the Court believes that the improper advantage can be removed by barring the plaintiff from using the improperly obtained evidence at trial.

The Court believes its approach satisfies each of the four *First Wisconsin* principles. Clearly, this is no per se bar of access to and use of pre-disqualification material. The amount of evidence subject to the bar should prove to be a small percentage of the material generated during the course of this case. The Court has also separated the disqualification issue from the issue of successor counsel's access to pre-disqualification material.

The application of the client fault principle is slightly more complicated in this case. Certainly, by barring the evidence that Wagner himself participated in developing, the Court is properly taking account of the fault attributable to Wagner. The Court intends, however, also to bar the evidence generated by Kane's misconduct even though the Court has never directly attributed blame to Wagner for Kane's actions. The Court has carefully considered whether the fact that Wagner was not directly connected with Kane's misconduct should result in the Wagner estate benefitting from Kane's actions. The goal of the client fault principle is to not punish the client for the lawyer's misconduct. However, by removing an improper advantage now held by Wagner's estate, the Court does not believe that it is punishing the estate for Kane's actions. Instead, all the Court is doing is restoring an equalibrium that should never have been disturbed. Additionally, the improper advantage in this case resulting from Kane's misconduct

is so great, that the importance of removing it is paramount.

For the reasons stated above, the Court holds that the plaintiff and her successor counsel may have access to all of the material generated during the course of this case, including all of the material filed under seal and all of the work product of disqualified counsel. The Court further holds that the plaintiff is barred from using in her case in chief the improperly obtained evidence generated by Wagner, Gomberg, and Kane which led to the disqualification of Gomberg and Kane.[4]

The Court has reviewed the record of the disqualification proceedings and has determined that the following evidence falls within the evidentiary bar:

(1) the tape recordings made on December 12, 1982, of conversations between Wagner, Travis and Gomberg, along with any resulting transcripts;

(2) any notes made by Wagner of conversations he had with Travis;

(3) Travis' December 17, 1982, reported "statement" made in New York;

(4) any evidence generated by the SEC or any other government agency after Kane left the employ of the SEC, specifically including any government generated evidence about Travis' activities at D.H. Blair;

(5) any documentary evidence regarding Travis obtained from D.H. Blair through the medium of government investigations; and

(6) any testimony, deposition segment, interrogatory, admission, or other type of evidence that refers to 1, 2, 3, 4, or 5 above.

The defendants are free to bring written motions requesting the Court to add additional items to this order *in limine* to

---

product for the purpose of sorting it out. The Court would not expect disqualified counsel to undertake the task because they would leave themselves open to further accusations of misconduct if there were errors. And finally, the Court believes there would be more than an appearance of impropriety if it were to undertake the incredibly time consuming task of sorting through disqualified counsel's extensive litigation file.

**4.** The evidentiary bar does not apply to the defendants. They may use any of the material described in the text either on cross-examination or in their case in chief. However, if the defendants do make use of any evidentiary item covered by the bar, the restrictions imposed on the plaintiff as to that item will be lifted.

effectuate the goal of removing the improper advantage over the defendants.

Having been disqualified from representing the plaintiff in this action, Gomberg and Kane are necessarily barred from consulting with successor counsel regarding the continued prosecution of this case. Therefore, successor counsel is barred from communicating with Gomberg, Kane, or any member of their firm except to the limited extent necessary to arrange the physical transfer of the material in their possession.

### D. Stay

Because of the possibility that this decision by the Court may constitute an appealable order, *First Wisconsin Mortgage Trust v. First Wisconsin Corp.*, 584 F.2d 201, 203 (7th Cir.1978), the Court has decided to stay the operation of the order for a sufficient period of time to give both sides an opportunity to consider an appeal. Accordingly, the operation of this order is stayed to and including November 10, 1987. If an appeal is taken within the period of the stay, the operation of this order is stayed pending a resolution of the appeal. If no appeal is taken, the plaintiff is granted until December 24, 1987, to either file a new complaint, or to move for a dismissal pursuant to Fed.R.Civ.P. 41.