[No. A070881. First Dist., Div. Two. Jan. 16, 1997.]

CAL PAK DELIVERY, INC., Plaintiff and Appellant, v.
UNITED PARCEL SERVICE, INC., Defendant and Respondent;
MICHAEL N. KHOURIE, Objector and Appellant.

**COUNSEL**

Cooley, Godward, Castro, Huddleson & Tatum and Michael Traynor for Plaintiff and Appellant.

Michael N. Khourie, in pro. per., for Objector and Appellant.

Morrison & Foerster, Robert D. Raven, Paul T. Friedman, Ruth N. Borenstein, Terri Garland, Shirley M. Hufstedler, Dan Marmalefsky, Anderson, Donovan & Poole and Ellis Ross Anderson for Defendant and Respondent.

**OPINION**

**KLINE, P. J.—**

### Introduction

In this case we determine whether the trial court abused its discretion in disqualifying Attorney Michael N. Khourie as counsel for Cal Pak Delivery, Inc. (Cal Pak) where Khourie admitted he had offered to sell out his client

and the class which the client was seeking to represent for a payment to himself personally of approximately $8 to $10 million. We believe that to state the question is to answer it.

We also address the related question of whether the trial court abused its discretion in ruling that Khourie could receive no attorney's fees either for work preceding his unethical act or thereafter, no matter how successful the eventual outcome of the litigation, and regardless whether his services materially contributed to that success.

### Statement of the Case/Facts

*Background.*

In 1992 Cal Pak, a competitor of respondent United Parcel Service (UPS), filed a complaint with the Public Utilities Commission (PUC) alleging UPS had made illegal overcharges between February 24, 1992, and February 3, 1993, and challenging UPS tariff revisions. The PUC ruled the UPS tariffs were "[U]nlawful and ineffective, since they were not approved by the [PUC], as required by [law]," but that UPS rates were reasonable for the future.

In April 1993, Cal Pak filed this action against UPS for overcharges and exemplary damages in San Francisco Superior Court. Styled as a class action on behalf of 150,000 members of the public who had utilized UPS's shipping services in 1992 it sought compensatory and punitive damages.

In November 1994, the PUC issued a decision dismissing with prejudice Cal Pak's request for refunds against UPS on the ground that Cal Pak's complaint " '[N]either sought reparations nor established damages.' " Acknowledging that refunds could be ordered if damages were demonstrated, the PUC denied Cal Pak's damage claim for lack of sufficient proof. In March 1995, the PUC denied Cal Pak's request for rehearing, but clarified ambiguities in its prior decision, stating it was continuing jurisdiction over the consolidated proceeding, but remained open to facilitate the claim of shippers other than Cal Pak to seek refunds.

*Khourie's payoff proposal.*

In January 1995, appellant Khourie, attorney for Cal Pak and the alleged class, contacted Edwin Reitman, UPS's vice-president for legal and regulatory affairs, stating he was planning to retire and suggesting a meeting to discuss settlement. On January 26, 1995, at a meeting in Atlanta, Khourie

proposed that Cal Pak, the sole class representative, would release its claims against UPS and that Khourie, the sole class counsel, would abandon and dismiss this action. Khourie said he would enter into a "confidential relationship" with UPS in which he would provide UPS all of his work product and other documents concerning this action and related PUC proceedings. In return, Khourie wanted UPS to pay $8 to $10 million to him personally; the class would receive nothing. Khourie told Reitman that by paying him this amount "up front," UPS could avoid paying the class, and stated that the multi-million-dollar payment to him had to be made on or before February 24, 1995. Coupled with this proposal was a threat of more litigation if UPS failed to make the payoff. The next day, Khourie faxed Reitman an article about attorney's fees in common fund cases and repeated that his request for payment of millions of dollars was within the range of reasonableness. On January 31, Khourie sent Reitman another fax outlining the details of his proposal and stating that "unless a resolution is completed and consideration changes hands prior [to February 24], the new actions [he] mentioned to [Reitman] will be filed on February 23, 1995." On February 1, 1995, Reitman sent Khourie a letter rejecting the proposal and emphasizing that the proposal breached Khourie's fiduciary duty to the class and disabled him from acting as class counsel.

*Todd-AO dismissal.*

On February 23, 1995, Khourie (together with the law firm of Lasky, Haas & Cohler) filed a class action on behalf of the Todd-AO Corporation and similarly situated parties, seeking the same relief as in this action. UPS demurred to the complaint in Todd-AO v. United Parcel Service, Inc. (Super. Ct. S.F. County, 1995, No. 967524) and simultaneously moved for an order disqualifying Khourie from further participation in the action. In April 1995, the trial court sustained the demurrer in Todd-AO, also ruling that because of its determination that it lacked subject matter jurisdiction, it also lacked jurisdiction over the disqualification motion.

*Cal Pak dismissal and Khourie's disqualification.*

Approximately one week later, on April 27, 1995, UPS demurred to the complaint in the instant action and simultaneously moved for an order disqualifying Khourie from further participation in the prosecution of this action. On May 12, 1995 following a hearing, the trial court granted the disqualification motion and sustained the demurrer to the complaint without leave to amend. The order dismissing the action was entered on May 15, 1995. In disqualifying Khourie as class counsel and barring him from any

further participation in the prosecution of the case the court specifically found (1) it had jurisdiction to disqualify Khourie; (2) Khourie's misconduct was contrary to the interests of the absent members of the proposed class; (3) Khourie's misconduct would have a continuing effect on this putative class action; and (4) a balancing of interests required that Khourie be disqualified. The order also prohibited Khourie "from receiving any fees (directly or indirectly) in connection with his representation in this case."

Thereafter, Khourie moved the court to vacate its disqualification order. Acknowledging it had not considered that portion of the order denying fees, the court, after a full hearing, nevertheless denied the motion to vacate its order, noting it had carefully examined its earlier ruling.[1]

*Appellate proceedings.*

Cal Pak timely appealed from the judgment dismissing its action and from the order disqualifying Khourie. Khourie separately filed an appeal from the disqualification order and the subsequent order denying his motion to vacate and set aside the disqualification order. On November 27, 1995, in violation of the superior court disqualification order, Khourie filed on behalf of both appellant Cal Pak and himself a combined brief addressing both the merits of the judgment of dismissal and the order disqualifying him. On January 4, 1996, upon UPS's motion to strike appellant's opening brief, we ordered that pages 4-22 of Cal Pak's opening brief (discussing the merits of the dismissal order) be stricken, stayed further briefing of the merits of the ruling on the demurrer, and ordered that UPS file a brief limited to its response to the argument that Khourie's disqualification should be reversed.

I.

*Disqualification*

■ "The authority to disqualify an attorney stems from the trial court's inherent power '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' (Code Civ. Proc., § 128 [subd. (a)(5)]; *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585 . . . .) In reviewing a disqualification motion, we will

---

[1]"Having considered the matter, and particularly the class action allegations pled in the complaint, the Court concludes that it is appropriate and necessary to bar Michael Khourie from recovering any fees for any services he rendered in connection with this action either before or after his admitted ethical misconduct in January 1995 in connection with this action."

uphold the trial court's decision absent an abuse of discretion. [Citations.] 'The trial court's exercise of this discretion is limited by the applicable legal principles and is subject to reversal when there is no reasonable basis for the action.' [Citations.]" (*Zador Corp.* v. *Kwan* (1995) 31 Cal.App.4th 1285, 1292-1293 [37 Cal.Rptr.2d 754]; accord, *Henriksen* v. *Great America Savings & Loan* (1992) 11 Cal.App.4th 109, 113 [14 Cal.Rptr.2d 184].)

## A.

█ Khourie contends the court lacked jurisdiction to disqualify him. He argues that once the court granted the demurrer and dismissed the case, there was no "judicial proceeding before it" and consequently, the court was without power to disqualify him. We disagree.

Initially, we observe that it is unclear whether the grant of the demurrer in this action preceded or followed the disqualification ruling. Both orders were signed May 12, 1995, and were filed on May 15th. It would be absurd to argue that the court's jurisdiction to disqualify counsel turns on which order it signed first.

More fundamentally, the case and counsel were properly before the court and the court had both "inherent power to exercise reasonable control over all proceedings connected with the litigation before it" (*Mowrer* v. *Superior Court* (1969) 3 Cal.App.3d 223, 230 [83 Cal.Rptr. 125]) and power under Code of Civil Procedure section 128, subdivision (a)(5), to disqualify an attorney. Khourie's offer to sell out the class came in this case while it was pending before the trial court and the court has the power to appropriately respond to such egregious conduct of counsel. Disqualification must not be permitted to turn on factual or legal considerations unrelated to the merits of the motion. Just as the court possessed the power to hear and determine Khourie's later request for reconsideration, it had the power to determine upon a proper showing that his conduct warranted disqualification. Although the parties have cited and we have found no case precisely on point, we find the court's retention of continuing jurisdiction to sanction counsel following its dismissal of a frivolous lawsuit to be somewhat analogous. (Cf. *West Coast Development* v. *Reed* (1992) 2 Cal.App.4th 693 [3 Cal.Rptr.2d 790].)

Khourie argues that UPS's concession in the trial court during hearing on the demurrer in Todd-AO that the sustaining of the demurrer would render the court without jurisdiction to decide the disqualification issue estopped UPS from obtaining the disqualification in this case. Again, we disagree.

UPS argued in this case that it had not fully considered the issue of the impact of granting the demurrer on the disqualification decision at the time

of the hearing in Todd-AO as it had been raised there without benefit of briefing, but that in the interim and after further research, UPS had come to the conclusion that the court possessed jurisdiction to disqualify counsel. The trial court agreed. Any such concession made by UPS in Todd-AO as to a matter of law did not constitute an estoppel in this case. Even if it had been made in *this* case, such a concession could not prevent the trial court here from exercising its inherent and statutory powers to disqualify counsel. "The parties to a judicial proceeding cannot . . . effectively stipulate or concede that the court either has or lacks jurisdiction to act in the particular matter. [Citation.]" (*Griggs* v. *Superior Court* (1976) 16 Cal.3d 341, 344, fn. 2 [128 Cal.Rptr. 223, 546 P.2d 727].)

## B.

 Khourie vigorously argues that the trial court abused its discretion in disqualifying him. He contends the court failed to properly apply the balance of interest test in that it improperly applied a per se disqualification rule, failed to consider the class' interest in him continuing to serve as counsel, failed to consider his interest in representing the class and failed to consider that by disqualifying counsel the court may have given UPS a tactical advantage. He also contends the court failed to properly apply the "continuing effects" test. We disagree with all of these contentions.

The trial court expressly stated that "Khourie's misconduct will have a continuing effect upon this putative class action." It also found "a balancing of interests also requires Khourie be disqualified."

 In reviewing the trial court's exercise of discretion to disqualify counsel, we apply the traditional substantial evidence standard of review. (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 596-597 [283 Cal.Rptr. 732].) "On review, we must accept the trial court's resolution of conflicting evidence and uphold the trial court's ruling if it is supported by substantial evidence. [Citations.] Under the familiar rules, we must consider the evidence in the light most favorable to the prevailing party and take into account every reasonable inference supporting the trial court's decision. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278, p. 289.)" (*Id.*, at p. 597.)

 Recognizing that the instant case is unlike most disqualification cases, where disqualification results from a conflict of interest involving disclosure or threat of disclosure of confidential information, Khourie attempts to distinguish his situation on the basis that his "proposal" did not involve any threat of disclosure of confidential information and was, in any

case, unsuccessful. It is true that this case is factually distinguishable from most of the disqualification cases, but the most notable difference is the magnitude of the ethical lapse. Though Khourie's conduct did not involve the misuse of confidential information, nor directly prejudice adverse parties, it was nonetheless *more* inimical to the interests of those he ostensibly represented. Had Khourie's scheme succeeded his clients would have been not just tactically disadvantaged but completely undone.

█ " 'The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity—*uberrima fides*.' [Citations.] Among other things, the fiduciary relationship requires that the attorney respect his or her client's confidences. [Citations.] It also means that the attorney has a duty of loyalty to his or her clients. [Citations.]" (*Zador Corp.* v. *Kwan, supra,* 31 Cal.App.4th 1285, 1293.) █ Surreptitiously contacting the opposing party and offering to dismiss a client's action or forego filing a valid cause of action in return for payment of fees directly to the attorney creates a conflict of interest (see, e.g., *Ramirez* v. *Sturdevant* (1994) 21 Cal.App.4th 904 [26 Cal.Rptr.2d 554]) and constitutes an obvious breach of the attorney's fiduciary obligation to the client. Although Khourie contends it is in the best interests of the potential class to permit his representation to continue, *it is highly unlikely* many of the 150,000 alleged class members would agree.

█ In *Gregori* v. *Bank of America* (1989) 207 Cal.App.3d 291 [254 Cal.Rptr. 853], we recognized that "[s]ince the purpose of a disqualification order must be prophylactic, not punitive, the significant question is whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court . . . . (*Chronometrics, Inc.* v. *Sysgen, Inc.* [(1980)] 110 Cal.App.3d 597, 607-608 [168 Cal.Rptr. 196].) Disqualification is inappropriate, however, simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings. (*Id.,* at p. 607.)" (*Id.* at pp. 308-309, criticized in *In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d 572, 591-592.)

█ We believe Khourie's unethical conduct is likely to have a continuing effect in this litigation adverse to the interests of the class he purports to represent. As noted in *Palumbo* v. *Tele-Communications, Inc.* (D.D.C. 1994) 157 F.R.D. 129, "The fact that [counsel] seek to represent a national class of plaintiffs makes the decision to disqualify even more compelling. If [counsel] were representing only an individual plaintiff, he could conceivably seek a written waiver of conflict of interest. But in this case, [counsel] seeks to represent a large, unenumerated and as yet unidentified class of plaintiffs.

Unidentified class members cannot waive a potential conflict of interest. ▇ In the class action context, the Court has an obligation to closely scrutinize the qualifications of counsel to assure that all interests, including those of as yet unnamed plaintiffs are adequately represented. See Fed.R.Civ. P. 23(a)(4) (representative parties must 'fairly and adequately represent the interests of the class'). This is because in certifying a class action, the Court confers on absent persons the status of litigants and 'creates an attorney-client relationship between those persons and a lawyer or group of lawyers.' [Citations.] Precisely because of the responsibility to absent class members, counsel's qualifications in the class action context are subject to a 'heightened standard.' [Citations.] Because of the conflict of interest detailed above, [counsel] do not meet the heightened standard required of attorneys in class action cases." (*Id.* at pp. 132-133.) ▇ In the instant case, we would be surprised if members of the putative class aware of Khourie's attempted betrayal of their interests did not harbor continuing doubts about his loyalty and the integrity of the judicial proceedings in which he participated.

Furthermore, where there is reason to doubt the loyalty of counsel or the adequacy of counsel's representation, serious questions arise concerning the preclusive effect of any resulting judgment. "If the certified class is not represented vigorously, the plaintiffs may lose a meritorious case and suffer the consequences of the adverse judgment, since all class members are bound by the result. [Citations.] Conceivably, even the defendant may also suffer prejudice from inadequate class representation because, in such circumstances, the class action judgment for defendant may not be given res judicata effect as to absent class members [citation] and the matters will be subject to costly relitigation." (*Ferraro* v. *General Motors Corporation* (D.N.J. 1984) 105 F.R.D. 429.)

The court properly determined that the balance of interest warranted disqualification.

Nor was the court prevented from disqualifying Khourie because his "proposal" was not successful or because he promised he would not again suffer such a lapse. The court was not required to credit Khourie's self-serving statements in this regard. Khourie's transgression might well have a substantial continuing effect on judicial proceedings to occur in the future. (*Chronometrics, Inc.* v. *Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 607 [168 Cal.Rptr. 196]; *Gregori* v. *Bank of America, supra,* 207 Cal.App.3d 291, 309.) The court could believe Khourie might again put his own interests above that of class members or, at the very least, the court could be

concerned about that possibility. Certainly Khourie's continued presence in the case after his colossal misdeed would cast a shadow on future attempts to certify the class and attempts to gain approval of Cal Pak as an adequate class representative, as well as upon any future settlement. It could well impact the preclusive effect given to the eventual result.

As to Khourie's claim that the court failed to consider the tactical advantage that might flow to UPS from his disqualification, nothing indicates the court failed to consider this possibility. Furthermore, "[e]ven if tactical advantages attend the motion for disqualification, that alone does not justify denying an otherwise meritorious motion." (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 599.)

Apart from the interests of the class or possible prejudice to UPS from Khourie's continued presence in the action, an additional consideration compels us to uphold his disqualification. This case truly is sui generis. Unlike *Gregori* and most other disqualification cases, here the trial court faced a direct, acknowledged, undisputed and indefensible betrayal by counsel of the interests of his client and the putative class. In such circumstances, the failure of the trial court to take immediate remedial action to disqualify counsel would constitute an abdication of judicial responsibility, violating the public trust and exposing judicial institutions to public obloquy. As our Supreme Court has observed: "However, ultimately the issue involves a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility. '*The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. . . . [The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of our judicial process.*' (Hull v. Celanese Corporation (2d Cir. 1975) 513 F.2d 568, 572.)" (*Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562], italics added; but see *Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 619 [639 P.2d 248, 180 Cal.Rptr. 177, 18 A.L.R.4th 333] [client may waive possible conflict in criminal prosecution].)

We in the judicial branch are responsible for the integrity of the judicial process. Khourie's misconduct shakes the foundations of that process, constitutes not just a betrayal of his clients but of public trust " 'in the scrupulous administration of justice and in the integrity of the bar.' "

We conclude the court did not abuse its discretion in disqualifying Khourie as counsel.

## II.

### Denial of Fees

Khourie contends the trial court erred in ordering that he be prohibited from receiving any fees in connection with the present case. He argues first that the issue of fees was not ripe for decision because the litigation had not been concluded and the court could not yet determine whether his services contributed to any recovery on behalf of the class. In the alternative, Khourie contends he is at least entitled to fees for services rendered prior to his commission of unethical conduct.

The trial court order disqualifying Khourie also prohibited him "from receiving any fees (directly or indirectly) in connection with his representation in this case." In the court's subsequent order denying Khourie's motion to vacate and set aside the order of disqualification, the court reexamined its ruling denying fees and concluded, "it is appropriate and necessary to bar Michael Khourie from recovering any fees for any services he rendered in connection with this action either before or after his admitted ethical misconduct in January 1995 in connection with this action." In so ruling, the court relied upon *Clark* v. *Millsap* (1926) 197 Cal. 765, 785 [242 P. 918], *Jeffry* v. *Pounds* (1977) 67 Cal.App.3d 6, 11 [136 Cal.Rptr. 373], and *Estate of Falco* (1987) 188 Cal.App.3d 1004, 1015-1016 [233 Cal.Rptr. 807].

It is the general rule in conflict of interest cases that where an attorney violates his or her ethical duties to the client, the attorney is not entitled to a fee for his or her services. (E.g., *Jeffry* v. *Pounds, supra,* 67 Cal.App.3d 6; *Goldstein* v. *Lees* ( 1975) 46 Cal.App.3d 614 [120 Cal.Rptr. 253]; *Asbestos Claims Facility* v. *Berry & Berry* (1990) 219 Cal.App.3d 9, 26-27 [267 Cal.Rptr. 896]; see also *Day* v. *Rosenthal* (1985) 170 Cal.App.3d 1125, 1162 [217 Cal.Rptr. 89] [no finding on reasonable value of attorney's services necessary because conflict of interest rendered services valueless]; *Conservatorship of Chilton* (1970) 8 Cal.App.3d 34, 43 [86 Cal.Rptr. 860] [in case of clear conflict of interest, no error. for trial court to find no value in services rendered].)[2]

*Clark* v. *Millsap, supra,* 197 Cal. 765, upon which the trial court relied, contains a very broad statement of this rule: "[A] court may refuse to allow

---

[2]The rule that an attorney who engages in conflicting representation without obtaining informed consent is not entitled to compensation is not based on the premise that the attorney must pay a penalty so much as on the principle that "payment is not due for services not properly performed." (*Schaefer* v. *Berinstein* (1960) 180 Cal.App.2d 107, 135 [4 Cal.Rptr. 236], overruled on other grounds in *Jefferson* v. *J.E. French Co.* (1960) 54 Cal.2d 717, 719 [7 Cal.Rptr. 899, 355 P.2d 643].)

an attorney any sum as an attorney's fee if his relations with his client are tainted with fraud. 'Fraud or unfairness on the part of the attorney will prevent him from recovering for services rendered; as will acts in violation or excess of authority, and acts of impropriety inconsistent with the character of the profession, and incompatible with the faithful discharge of its duties.' (6 Cor. Jur. 722, 723.)" (*Id.* at p. 785.) Nevertheless, the Supreme Court upheld the trial court's allowance of the defendant attorney to recover fees of $7,500 of the $20,000 he claimed where the client did not object to the fee recovery of that lesser sum. (*Ibid.*) *Clark* v. *Millsap* involved an action for accounting by a former client of defendant attorney who had induced the client to transfer all her assets to a corporation, controlled by him, in order to defraud the client's creditors. However, the rule, as stated therein is not limited to accomplished frauds.

In *Jeffry* v. *Pounds, supra,* 67 Cal.App.3d 6, the appellate court held counsel's breach of rules of professional conduct prohibiting an attorney from representing conflicting interests except with written consent of all parties concerned prevented recovery for services rendered after the breach of professional conduct, but that fees should be limited to the value of services rendered before the date of the violation. (*Id.* at p. 12.) The court recognized that the general doctrine that a client must pay the reasonable value of the attorney's services performed up to the time of discharge is "qualified by the rule that acts of impropriety inconsistent with the character of the legal profession and incompatible with the faithful discharge of professional duties will prevent an attorney from recovering for his [or her] services. (*Clark* v. *Millsap,* 197 Cal. 765, 785 . . . ; *Goldstein* v. *Lees,* 46 Cal.App.3d 614, 618. . . .)" (*Id.* at p. 9.)

In *Estate of Falco, supra,* 188 Cal.App.3d 1004, the trial court denied recovery of fees to the attorney representing will contestants, where the attorney had withdrawn his representation before a settlement agreement was reached. On appeal, it was held the attorney's voluntary withdrawal from the case without cause forfeited his right to recovery in quantum meruit for services performed. "[A]n attorney who withdraws voluntarily without cause forfeits recovery for services performed." (*Id.* at p. 1015.) Nevertheless, the appellate court acknowledged that an attorney may be entitled to recover under a theory of unjust enrichment if a client who repudiates a settlement subsequently accepts settlement terms substantially similar to those negotiated by the attorney prior to the attorney's withdrawal. (*Id.* at p. 1019.) A question of fact is presented as to whether the settlement was the direct result of former counsel's labor. (*Ibid.*)

The foregoing cases are not directly on point. They articulate the rule that a court may prevent counsel's recovery of fees from the client where the

attorney has violated ethical rules; whether through fraud, acts incompatible with the faithful discharge of duties or wrongful abandonment of the client. The trial court could properly conclude that Khourie's "proposal" fit within any of these categories.

However, the appellate courts in all three of the above cases allowed partial fee recovery or acknowledged that *some* fees could be recovered by the attorney: (1) where there was no objection by the client (*Clark* v. *Millsap, supra,* 197 Cal. 765); (2) for services rendered before the ethical breach (*Jeffry* v. *Pounds, supra,* 67 Cal.App.3d 6); or (3) on an unjust enrichment theory where the client's recovery was a direct result of the attorney's services (*Estate of Falco, supra,* 188 Cal.App.3d 1004).

Here, counsel labored on this case for three years before committing the actions resulting in his disqualification. It is unknown today whether a class ever will be certified, nor is it known whether Cal Pak or putative class members will benefit from Khourie's past efforts. It may be that Khourie's labors during the three years before his breach will prove dispositive in some future recovery by persons as yet unidentified.

Moreover, the fee denial request was initiated by respondent UPS; no client-victim of Khourie's misconduct has yet sought to deny him fees. If in later litigation it is determined that UPS is liable to Cal Pak or to class members for its overcharges, the question arises whether Khourie's violation of his ethical duties toward his own client and to the class warrant a denial of fees. On the other hand, it may also be the case that no fee issue will ever be presented, should the underlying litigation result in no recovery. We believe that with respect to the issue of Khourie's right to recover fees for services rendered *before* his breach of duties to his client and to the putative class, the trial court order was premature, as many of the events which should guide the court's discretion in making that determination have not occurred and may never occur. The determination whether to award fees to Khourie for services rendered before the date of his misconduct must await the outcome of the underlying litigation. At that time, the trial court will have before it all the factors bearing upon the fee issue.

At the same time, our reading of the above cases persuades us that the court clearly did not abuse its discretion insofar as it denied fees for services rendered by Khourie after the date of his misconduct.

## III.

### No Prohibition on Work Product Access

■ In an effort to secure maximum tactical benefit from opposing counsel's ethical breach, UPS seeks an order from this court denying successor counsel access to Khourie's work product from this appeal and the related Todd-AO appeal. The trial court did not make such an order and there is no issue on appeal before this court relating to work product confidentiality.[3] We deny the request to the extent it relates to the instant appeal.

UPS argues that to allow Khourie to communicate his appellate work product to successor counsel rewards Cal Pak's role in allowing Khourie to file the appeal brief in defiance of the superior court's disqualification order. Such a prohibition at this point would injure not only Cal Pak, but the class, if one is eventually certified.[4] No California case that we have found goes so far where the ethical breach does not involve the acquisition of privileged or confidential information by counsel as a result of the breach of ethics, usually where the breach involved dual representation. The sole case cited by UPS in support of this sanction is *Wagner* v. *Lehman Bros. Kuhn Loeb, Inc.* (N.D.Ill. 1987) 683 F. Supp. 189. There, the court made clear that the penalty of not allowing work product to be available to successor counsel is not a penalty against the lawyer, but the client. Among the principles guiding imposition of such a penalty is that the court "must focus on the specific *injury to the movant* caused by the disqualifying conduct and formulate *a remedy which removes any improper advantage* that has been, or might be, gained over the movant. [Citation.]" (*Id.* at p. 193, italics added.) When so

---

[3]Appellant sought such order in its motion to strike Cal Pak's opening brief and we did not address it in our order of January 4, 1996.

[4]We note in this regard that rule 3-700 (D) of the State Bar Rules of Professional Conduct provides in relevant part that "[a] member [of the bar] whose employment has terminated shall: [¶] (1) Subject to any protective order or non-disclosure agreement, promptly release to the client, at the request of the client, all the client papers and property. 'Client papers and property' includes correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not . . . ."

The commentary following rule 3-700 makes clear that the member must " 'avoid reasonably foreseeable prejudice to the rights of the clients.' What such steps would include, of course, will vary according to the circumstances. Absent special circumstances, 'reasonable steps' do not include providing additional services to the client once the successor counsel has been employed and rule 3-700(D) has been satisified." (Discussion, 23 pt. 3 West's Ann. Cal. Court Rules (1996 ed.) rule 3-700, pp. 408-409.)

viewed, it is obvious that UPS has suffered no injury caused by Khourie's disqualifying conduct, nor has appellant gained any improper advantage over UPS which would be remedied by prohibiting successor counsel from access to Khourie's appellate work product.

We affirm the order disqualifying Khourie as counsel. We reverse as premature that part of the order precluding him from recovering attorney's fees for services rendered before January 10, 1995. Respondent UPS shall recover its costs on this appeal.

Haerle, J., and Lambden, J., concurred.