Filed 7/23/13  Sagonowsky v. Kekoa CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHRISTINA M. SAGONOWSKY et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CURTIS KEKOA, JR., et al., <br><br> Defendants and Respondents. | A135726 <br><br> (San Mateo County <br> Super. Ct. No. CIV501548) |

Plaintiff Christina M. Sagonowsky, individually and as Executor for the Estate of Leocadia Sagnowsky (Sagonowsky), appeals after the trial court granted the motion of defendant Curtis Kekoa, Jr. (Kekoa) for disqualification of Sagonowsky's counsel, Bradley R. White, for reviewing and utilizing certain attorney-client privileged emails and voicemails, in this malicious prosecution action.[1]  This appeal is only the latest in an ongoing series of legal proceedings between former spouses Sagonowsky and Kekoa. Sagonowsky contends the trial court erred in disqualifying White from representing her in this action and ordering her to return communications between Kekoa and his former attorney, Robert Sprague, claiming that Kekoa's motion was an abusive tactic meant to prevent the fair resolution of the malicious prosecution case.

---

[1] Robert P. Sprague, Kekoa's former attorney, represented Kekoa in the civil action and the parts of the divorce action from which Sagonowsky's malicious prosecution action arose, and is also a defendant in the malicious prosecution action.  He has not, however, filed a brief in response to Sagonowsky's appeal of the court's grant of Kekoa's disqualification motion.

1

In particular, Sagonowsky asserts the order must be reversed because (1) she made a prima facie showing that Kekoa unreasonably delayed in bringing his motion; (2) the court failed to make the required finding that her attorney's review of the communications was likely to affect the outcome of the case; (3) the court failed to determine whether Kekoa waived the attorney-client privilege as to these communications; (4) the court erred in finding that the crime-fraud exception to the attorney-client privilege did not apply; (5) under the unusual circumstances of this case, the communications should not be considered confidential attorney-client communications; and (6) the court abused its discretion in disqualifying her attorney, who had received the communications from Sagonowsky, after Sprague intentionally provided them to her.

We agree with Sagonowsky that, in making its ruling, the trial court failed to exercise its discretion to determine whether White's review and use of the communications was genuinely likely to affect the outcome of the case. Such a determination was required before the court could properly take the extreme action of disqualifying Sagonowsky's counsel. We therefore shall reverse and remand the matter to the trial court so that it can exercise its discretion on this question.

### PROCEDURAL AND FACTUAL BACKGROUND[2]

Numerous lawsuits have been filed over the years between Sagonowsky and Kekoa, as well as between each of them and Kekoa's former attorney, Sprague. The original lawsuit from which all of the subsequent actions sprang was a marital dissolution action filed by Sagonowsky against Kekoa in San Francisco Superior Court on November 10, 2003. Sagonowsky filed this malicious prosecution case in San Mateo County Superior Court on December 15, 2010, based on both Kekoa's prior unsuccessful civil action against her and her late mother, Leocadia, as well as on several claims in the

---

[2] We include here, and in the Discussion, only those facts necessary to a basic understanding of the case and our holding.

divorce action, in which he made numerous allegations related to supposed misconduct by Sagonowsky and her mother in their financial dealings with him.

On or about January 9, 2012, Kekoa filed a motion to disqualify Sagonowsky's counsel, White. The motion was based on White's use of six partially redacted emails and a series of voicemails between Kekoa and Sprague at Kekoa's October 13, 2011, deposition and his refusal to return them to Kekoa. White had received these communications from Sagonowsky, who had previously received them from Sprague, and his paralegal, Monica Blake.

On April 30, 2012, the trial court granted Kekoa's motion and issued an order disqualifying White and ordering the return of the emails and voicemails.

On June 13, 2012, Sagonowsky filed a notice of appeal from the trial court's disqualification order.

## *DISCUSSION*

### *Trial Court's Failure to Determine if White's Review of the Privileged Communications Would Affect the Outcome of the Case*

Sagonowsky challenges the trial court's failure to make any finding as to whether her attorney, White's, possession, review, and use of the communications in question was truly likely to affect the outcome of the case.[3]

### A. *Trial Court Background*

In granting Kekoa's motion to disqualify White from further representation of Sagonowsky in this action, the trial court found, inter alia, that "Mr. White received

---

[3] Preliminarily, Kekoa argues that Sagonowsky waived any challenge to the sufficiency of the evidence of the trial court's order because the only evidence she discussed in her briefs on appeal was evidence supporting her position. (See *Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 53 [parties challenging sufficiency of evidence must "set forth in their brief *all* the material evidence on the point and *not merely their own evidence*," or "the error is deemed to be waived"] (*Clark*).) Given our finding, as discussed, *post*, that the case must be remanded for the court to exercise its discretion, we do not reach the merits of the appeal and need not determine whether Sagonowsky adequately discussed the evidence supporting the trial court's ruling in her briefs to avoid forfeiture of her claims challenging the sufficiency of the evidence.

3

attorney-client privileged communications between Mr. Kekoa and Mr. Sprague that plaintiff Christina Sagonowsky obtained from Mr. Sprague through his paralegal, Monica Blake. In a declaration filed on September 16, 2011, in this action, Ms. Sagonowsky admits that she received copies of confidential attorney-client voicemail and partially redacted email communications from Mr. Sprague through his paralegal Monica Blake. [Kekoa's] counsel Mr. Martini avers that he first learned of the disclosure of the voicemails at Mr. Kekoa's deposition on October 13, 2011. Mr. Martini objected that the voicemails were privileged communications and demanded their return by Mr. White. Mr. White refused. The Court finds that Mr. White possessed these privileged voicemail communications, reviewed them excessively and used them in this litigation.

"The Court excludes from its ruling and the scope of the order that follows the emails that were produced at the depositions of Mr. Sprague and Monica Blake in 2007. Mr. Kekoa does not dispute that these documents were subsequently identified, produced and/or attached to court filings in various proceedings between the parties. Mr. Kekoa has known of the disclosure of these documents since 2007 and has had the opportunity [to] seek appropriate protective orders as to these documents since that time. The Court declines to rule whether there has been an implied or actual waiver of privilege as to any of these documents. Mr. Kekoa may raise the issue of the admissibility of these documents before the trial judge or at an appropriate time."

The court also rejected Sagonowsky's argument that use of the communications was permissible under the crime-fraud exception to the attorney-client privilege found in Evidence Code section 956, ruling that Sagonowsky had made a prima facie showing that Kekoa had obtained the services of Sprague to aid him in a malicious prosecution, but not to aid him in committing fraud or any other crime.

In addition to its order disqualifying White from representing Sagonowsky in her malicious prosecution action, the court ordered return of the communications in question and further ordered Sagonowsky and White to destroy any additional copies of the documents they possessed and to refrain from discussing their contents with any future

4

attorney of Sagonowsky in this matter. Finally, the court stated that its order did not preclude Sagonowsky from obtaining any of the documents through discovery.

## B. *Legal Analysis*

"The trial court's power '[t]o control in furtherance of justice, the conduct of its ministerial officers' is the basis upon which it may disqualify an attorney. [Citations.]" (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 299-300 (*Gregori*), quoting Code Civ. Proc., § 128, subd. (5).) We review the trial court's ruling on this issue for an abuse of discretion. (*Gregori*, at p. 300.) "In exercising its discretion, the trial court must make a 'reasoned judgment' and compl[y] with the '. . . legal principles and policies appropriate to the particular matter at issue.' [Citations.]" (*Ibid.*)

In *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 656 (*State Fund*), the appellate court discussed the ethical obligations of an attorney when he or she comes into possession of privileged materials without the privilege's holder having waived it: "When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged." Subsequently, in *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 818 (*Rico*)**,** the California Supreme Court confirmed the importance of these obligations, which are rooted in an attorney's duty to " 'respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice.' "[4]

In *Gregori*, *supra*, 207 Cal.App.3d 291, 300-301, we discussed the competing policy considerations presented by motions to disqualify counsel: "On the one hand, a

_____

[4] In light of the need to remand the case to the trial court, we will not address the party's dispute about, inter alia, whether the duties discussed in *State Fund* and *Rico* apply only when disclosure of the privileged materials is inadvertent.

5

court must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court. [Citations.] On the other hand, it must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement.

"Additionally, as courts are increasingly aware, motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent. [Citation.] Such motions can be misused to harass opposing counsel [citation], to delay the litigation [citation], or to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable. [Citations.] In short, it is widely understood by judges that 'attorneys now commonly use disqualification motions for purely strategic purposes . . . .' [Citations.]" (Fns. omitted.)

In *Gregori*, *supra*, 207 Cal.App.3d 291, 308-309, we explained the importance of determining future prejudice before disqualifying counsel: "Since the purpose of a disqualification order must be prophylactic, not punitive, the significant question is whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court. Thus, disqualification is proper where, as a result of a prior representation or through improper means, there is a reasonable probability counsel has obtained information the court believes would likely be used advantageously against an adverse party during the course of the litigation. Though such information cannot be unlearned, and the lawyer who obtained it cannot be prevented from giving it to others, disqualification still serves the useful purpose of eliminating from the case the attorney who could most effectively exploit the unfair advantage. [Citation.] Disqualification is inappropriate, however, simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings. [Citation.]" (Accord, *Clark*, *supra*, 196 Cal.App.4th at p. 55 ["disqualification is proper as a prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed"]; *Oaks*

6

*Management Corp. v. Superior Court* (2007) 145 Cal.App.4th 453, 457, 469 [reversing disqualification order after finding disclosure of financial information would have no substantial continuing effect on future proceedings]); *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 11 [trial court properly found that attorney's unethical conduct was likely to have a continuing effect on litigation]; but see *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 591-592 [disagreeing with *Gregori*'s focus on possible effect of disclosure on outcome of proceeding].)

In the present case, we conclude the trial court omitted a crucial step in the exercise of its discretion in that it failed to determine "whether there exists a genuine likelihood" that White's possession of the privileged communications in question would affect the outcome of the litigation.  (*Gregori*, *supra*, 207 Cal.App.3d at p. 309; see *Kahn v. Lasorda's Dugout, Inc.* (2003) 109 Cal.App.4th 1118, 1124 [" 'The failure to exercise discretion is an abuse of discretion' "]; compare *Clark*, at p. 54 [noting that petitioner did not suggest trial court misunderstood applicable legal principles guiding exercise of its discretion, but instead, he "disagree[d] with *how* the court exercised its discretion"]; *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*, *supra*, 52 Cal.App.4th at p. 13 [trial court did not abuse its discretion when it found, after a balancing of interests, that probable continuing effect of attorney's unethical conduct on litigation warranted disqualification].)

There are many aspects of this case that are atypical and do not fit neatly into any category for purposes of deciding whether the remedy of disqualification is appropriate. (Cf. *In re Complex Asbestos Litigation*, *supra*, 232 Cal.App.3d at p. 587 ["this case is yet another square peg that does not fit the round holes of attorney disqualification rules"].)[5] For example, in 2009, a panel of this Division affirmed the trial court's ruling against Kekoa in a legal malpractice action Kekoa brought against his former attorney, Sprague,

---

[5] Despite these unusual circumstances, discussed, *post*, we will assume, solely for purposes of resolving the question we reach today, that the documents in question were in fact protected by the attorney-client privilege.

agreeing with the trial court's conclusion that the relationship between Sprague and Kekoa was not that of attorney-client, but of employer-employee, with Kekoa (who is also an attorney) engaging Sprague as an employee to assist him in his dissolution action.[6] (*Sprague v. Kekoa* (Dec. 8, 2009, A122018) [nonpub. opn.].)  In the present matter, Sagonowsky gave the communications in question to her attorney, White, after receiving them from Sprague through his paralegal, Monica Blake.

In addition, the six redacted emails were but a fraction of the many hundreds of similar—and some perhaps *identical*—communications that were previously produced in this or related actions and that were expressly excluded from the trial court's disqualification and protective order.  This raises a question regarding whether White's possession and use of these particular emails truly gave him an unfair advantage in the litigation or even whether they can be said to have "obviously appear[ed] to be subject to an attorney-client privilege or otherwise clearly appear[ed] to be confidential and privileged" when he received them from Sagonowsky and used them in the litigation. (*State Fund, supra,* 54 Cal.App.4th at p. 656.)  Nor did the court discuss the relevance of the communications, particularly the voicemails, to the malicious prosecution action. This would of course be a factor to consider in determining whether the outcome of the case is genuinely likely to be affected. (*Gregori*, *supra*, 207 Cal.App.3d at p. 309.)

Finally, we observe that the litigation between Sagonowsky and Kekoa has been bitter in the extreme and has continued for years, without an end in sight.  As Sagonowsky notes, Kekoa filed his motion for disqualification on or about January 9, 2012, shortly after the trial court had denied several other motions he filed against her and had also granted a motion she filed.  The orders going against Kekoa included the court's April 11, 2011 order denying his anti-SLAPP motion;[7] the September 21, 2011,

---

[6] In the same opinion, we declared Kekoa a vexatious litigant, pursuant to Code of Civil Procedure section 391.

[7] In the order denying Kekoa's anti-SLAPP motion, the court found, inter alia, that Sagonowsky had made "a prima facie case, with a likelihood of prevailing, that the Civil Action and Divorce Actions terminated in [her] favor, on the merits; that the claims

8

order denying his motion to transfer and consolidate this case with the San Francisco divorce case; and the October 5, 2011, order denying his motion to dismiss. In addition, on September 28, 2011, the court had granted Sagonowsky's motion to compel Kekoa to appear for his deposition and produce documents, and for sanctions. Trial on Sagonowsky's malicious prosecution claims was also approaching: a trial setting date had been calendared for June 11, 2012. (See *Gregori*, *supra*, 207 Cal.App.3d at p. 301 [disqualification motions can be misused "to harass opposing counsel," "to delay the litigation," "or to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable"].)

We believe that all of these factors are relevant to the trial court's determination of whether White's disqualification was in fact necessary to keep the disclosure of the privileged documents from having a "substantial continuing effect on future proceedings" or whether other remedies are better suited to safeguarding Kekoa's confidences while upholding the integrity of the judicial process. (See *Gregori*, *supra*, 207 Cal.App.3d at p. 309; see also *State Fund*, *supra*, 70 Cal.App.4th at p. 657 [disqualification may be justified in appropriate case, " 'assuming other factors compel disqualification' "].)

"Rather than disqualification of counsel, other sanctions can suffice. [Citation.] Client confidences can be protected from unwarranted public disclosure by less drastic measures such as: protective orders, limiting the admission of evidence; in camera proceedings; the use of sealed records; payment of attorney fees and costs; and disciplinary sanctions through the State Bar of California in appropriate circumstances." (*Neal v. Health Net, Inc.* (2002) 100 Cal.App.4th 831, 844, citing, inter alia, *Gregori*, *supra*, 207 Cal.App.3d at pp. 308-309.) It is particularly important in this case, in light of its tortuous history and the ubiquitous nature of the many communications between Kekoa and Sprague, that the trial court realistically assess whether other remedies would

against [her] objectively lacked probable cause; and were initiated and continued to be prosecuted with malice, resulting in damage."

9

be sufficient to avoid prejudicing Kekoa before resorting to the drastic remedy of disqualification.

Accordingly, the matter must be reversed and remanded to permit the trial court to exercise its discretion to answer the "significant question," of whether, in light of all of the circumstances, Kekoa would be likely to in fact suffer future prejudice from White's continued representation of Sagonowsky or whether, instead, other remedies would suffice. (*Gregori*, *supra*, 207 Cal.App.3d at p. 309; see *Kahn v. Lasorda's Dugout, Inc.*, *supra*, 109 Cal.App.4th at p. 1124.)

### *DISPOSITION*

The order of disqualification is reversed and the matter is remanded to the trial court with directions to exercise its discretion to determine whether disqualification of Sagonowsky's counsel is necessary and appropriate, consistent with the views expressed herein. Each party shall bear its own costs on appeal.


_____
Kline, P.J.


We concur:


_____
Haerle, J.


_____
Lambden, J.


10