[Civ. No. 35391. Second Dist., Div. Two. May 25, 1970.]

Conservatorship of the Person and Estate of
T. MARIE DUNBAR CHILTON.
JAMES J. ARDITTO, Petitioner and Appellant, v.
SECURITY PACIFIC NATIONAL BANK, as Conservator, etc., et al.,
Objectors and Respondents.

---

## COUNSEL

James J. Arditto, in pro. per., and Daniel B. Condon for Petitioner and Appellant.

Latham & Watkins, Arne S. Lindgren, Kindel & Anderson and Malcolm George Smith for Objectors and Respondents.

## Opinion

**THE COURT.**—Petitioner James J. Arditto, an attorney, sought to recover fees from Security Pacific National Bank, conservator of the estate of T. Marie Chilton, for services rendered to Mrs. Chilton between 20 June 1968 and 5 February 1969. The trial court refused to award him fees in addition to the fee of $1,000 he had been awarded for services to Mrs. Chilton between 31 July 1968 and 13 November 1968, and he appeals. The findings and conclusions of the trial court, several of which are attacked by petitioner as lacking support in the evidence, adequately disclose the circumstances of this case:

"1. Security Pacific National Bank is the duly appointed and acting Temporary Conservator of the Estate of T. Marie Dunbar Chilton, having been so appointed by proper order of this court on or about June 12, 1968, and this fact was at all times well known to petitioner James J. Arditto.

"2. Petitioner James J. Arditto is an attorney at law licensed to practice in the State of California.

"3. William A. Chilton is the duly appointed and acting Temporary Conservator of the Person of T. Marie Dunbar Chilton, having been so appointed by proper order of this court on February 5, 1969.

"4. Petitioner James J. Arditto, prior to June 10, 1968, was introduced to Bruce Dickerson Stevens by a friend and substantial client of James J. Arditto.

"5. Bruce Dickerson Stevens (hereinafter Mr. Stevens) put petitioner Arditto in contact with T. Marie Dunbar Chilton (hereinafter Mrs. Chilton) on or about June 20, 1968. At a meeting with Mr. Stevens, petitioner Arditto and Mrs. Chilton, held on or about June 20, 1968, petitioner Arditto agreed to attempt to terminate the then existing conservatorship of the Estate of T. Marie Dunbar Chilton.

"6. Mrs. Chilton, in the fall of 1968, was 85 years of age.

"7. On or before July 29, 1968, petitioner Arditto received a copy of the Findings and Conclusions and Order of Judge Walter C. Allen, dated June 6, 1968, appointing the Security Pacific National Bank as Conservator of the Estate of T. Marie Dunbar Chilton. Petitioner Arditto reviewed this document and specifically noted therefrom that Mr. Stevens was not related to Mrs. Chilton; that Mrs. Chilton is likely to be imposed upon by artful and designing persons; that Mrs. Chilton through the time of the trial of the conservatorship petition had been under the domination and undue influence of Mr. Stevens in that his will and wishes had been wholly substituted for the free and voluntary choices of Mrs. Chilton in numerous

instances, including the execution of a Power of Attorney, the dismissal of Mrs. Chilton's accountants and attorneys of long standing, the execution of a substitution of attorneys, and the securing of numerous checks drawn by Mrs. Chilton, some of which were payable to entities controlled by Mr. Stevens and some of which paid for certain expenses of Mr. Stevens. Petitioner Arditto also noted the Finding related to Mr. Stevens' efforts to open a checking account at the Union Bank in connection with an attempt to transfer substantially all of the balance of Mrs. Chilton's checking account to that bank from the Security Pacific National Bank. In addition, petitioner Arditto noted the Finding that Mrs. Chilton is very forgetful and is unable to recall matters pertaining to her business and financial affairs, is unable to concentrate on important business and financial matters and that she does not investigate matters which are important to the preservation of her assets.

"8. At no time did petitioner Arditto investigate the background of Mr. Stevens nor did he investigate the basis for any of the Findings made by Judge Walter C. Allen on June 6, 1968.

"9. Petitioner Arditto drafted a written retainer agreement, dated July 31, 1968, purporting to retain him as Mrs. Chilton's attorney for the purpose of initiating proceedings to terminate the existing conservatorship of her Estate. Petitioner Arditto delivered this agreement to Mr. Stevens on or about July 29, 1968, and Mr. Stevens presented the same to Mrs. Chilton for her signature. Mr. Stevens later re-delivered this agreement, purportedly signed by Mrs. Chilton, to petitioner Arditto. Petitioner Arditto was not present at the time said retainer agreement was allegedly executed by Mrs. Chilton. Mr. Stevens obtained the signature of Mrs. Chilton through imposition and undue influence.

"10. On July 31, 1968, Mrs. Chilton was not able to enter into a contract and did not have the capacity to handle her business affairs.

"11. Petitioner Arditto was informed, on or about August 20, 1968, of Mrs. Chilton's lack of capacity, as aforesaid.

"12. At no time did petitioner Arditto request this court to examine and approve the aforesaid written retainer agreement.

"13. During the period of June 20, 1968, through February 5, 1969, petitioner Arditto had numerous meetings with Mrs. Chilton. Mr. Stevens was present at all of these meetings.

"14. At no time did petitioner Arditto advise Mrs. Chilton to terminate her relationship or association with Bruce Dickerson Stevens.

"15. During the aforesaid meetings, Mrs. Chilton advised petitioner

Arditto that she had executed a holographic will. Petitioner Arditto never requested that he be given a copy of this holographic will, although at many of the aforesaid meetings the subject of the estate plan of Mrs. Chilton was discussed.

"16. A copy of the formal will executed by Mrs. Chilton on April 15, 1967, was delivered to petitioner Arditto by Mr. Stevens prior to November 20, 1968.

"17. Petitioner Arditto made certain notations on a copy of said will among which was a notation that Mr. Stevens was to receive a gift of approximately $50,000.00 cash and Mrs. Chilton's home. Also, petitioner Arditto noted that Mr. Stevens was to be one of two trustees of a foundation to be created to dispose of Mrs. Chilton's Estate after her death. These notations on the will were made prior to November 20, 1968.

"18. Petitioner Arditto was informed, prior to November 20, 1968, of the intention of Mr. Stevens and Mrs. Chilton to marry. At no time did petitioner Arditto discuss with Mrs. Chilton the subject of a pre-nuptial agreement.

"19. On or about November 21, 1968, petitioner Arditto received from Mr. Stevens a certificate of a purported marriage resulting from a purported ceremony between Mrs. Chilton and Mr. Stevens which took place in or near Las Vegas, Nevada on November 20, 1968. Petitioner Arditto placed the said certificate in his office safe.

"20. At no time did petitioner Arditto advise Mrs. Chilton of the provisions of the law regarding the rights of a spouse who is not provided for in a will executed prior to a marriage.

"21. Prior to February 6, 1969, petitioner Arditto at no time informed Security Pacific National Bank (the Conservator of the Estate of T. Marie Dunbar Chilton) nor its attorneys, Latham & Watkins, nor this court, of the purported marriage of Mrs. Chilton and Mr. Stevens, although the following opportunities existed, among others, for such a disclosure:

"(a) A meeting on December 12, 1968, at petitioner Arditto's office at which he, together with Mrs. Chilton, Mr. Stevens and representatives of Security Pacific National Bank and the law firm of Latham & Watkins were present.

"(b) A meeting on January 7, 1969, at Mrs. Chilton's residence at which petitioner Arditto, Mr. Stevens, Mrs. Chilton and representatives of Security Pacific National Bank were present.

"(c) Certain objections in the above-entitled cause were prepared by

petitioner Arditto, dated January 24, 1969, and filed with this court purportedly on behalf of Mrs. Chilton and signed in two separate places by her as Mrs. Chilton.

"(d) A hearing on January 31, 1969, before Judge Arthur K. Marshall on the above-noted objections in which petitioner Arditto participated.

"22. At no time prior to February 6, 1969, did petitioner Arditto inform William A. Chilton, the step-grandson of Mrs. Chilton, of the said marriage.

"23. Petitioner Arditto has represented Mr. Stevens in the above referenced cause and also in the following cases pending in this court:

"(a) *Thomas C. Lynch, Attorney General of the State of California v. Little Kids Church, Inc., a California non-profit charitable corporation, and Bruce D. Stevens, et al.,* L.A. Super.Ct. Case No. 941,794;

"(b) *T. Marie Dunbar Chilton, by William A. Chilton, her Conservator, and T. Marie Dunbar Chilton, individually, v. Bruce Dickerson Stevens and Does I - XX,* L.A. Super.Ct. Case No. D-742,957; and

"(c) *William A. Chilton, as Conservator of the Person of T. Marie Dunbar Chilton, and T. Marie Dunbar Chilton, by William A. Chilton, her Conservator v. Bruce Dickerson Stevens and Does I - XX,* L.A. Super.Ct. Case No. 947,482.

"These court proceedings, with the exception of the *Lynch* case referenced above, all affect the interests of Mrs. Chilton and petitioner Arditto's representation of Mrs. Stevens has been inimical to Mrs. Chilton's interest and to her Estate in these cases.

"24. The action and interest of Mr. Stevens in the above-referenced cause and the other lawsuits noted above in which petitioner Arditto represented Mr. Stevens are motivated by the desire of Mr. Stevens for personal gain and profit at the expense of Mrs. Chilton and her Estate and the interests of Mr. Stevens and Mrs. Chilton therein are in direct conflict.

"25. The conduct and actions of petitioner Arditto in purporting or assuming to represent Mrs. Chilton as her purported personal attorney in this proceeding have been directly against and contrary to her best interests and the best interests of her Estate. Petitioner Arditto's legal services rendered in the various proceedings herein which he initiated or contested as purported attorney for Conservatee, had they been successful or should they so result, would serve to further the nefarious plans and

schemes of Mr. Stevens at the expense and best interests of Mrs. Chilton and her Estate.

"26. The purported services of petitioner Arditto have been of no value to Mrs. Chilton and her Estate but have resulted in great and unnecessary expense to the said Estate.

"27. At no time since petitioner Arditto assumed to represent Mrs. Chilton as her attorney has she been in sufficient possession of her mental faculties to enter into any kind of contract of employment with him.

"28. Any conclusion of law herein made which is a finding of fact is hereby adopted by the court as a finding of fact.

"From the foregoing facts the court concludes:

"1. T. Marie Dunbar Chilton had no capacity to enter into a valid contract employing petitioner James J. Arditto as her attorney on June 20, 1968, or July 31, 1968, or at any other time since a Conservator of her Estate was appointed.

"2. T. Marie Dunbar Chilton lacked the necessary understanding to enter into a valid contract of employment with petitioner James J. Arditto on July 31, 1968, and the purported written retainer agreement of that date is void.

"3. Petitioner James J. Arditto has rendered no services to T. Marie Dunbar Chilton, or to her Estate, which are of any value to her or to her Estate. Petitioner James J. Arditto is not entitled to be paid any amount therefor from Mrs. Chilton or her Estate.

"4. The purported written retainer agreement, dated July 31, 1968, was secured from T. Marie Dunbar Chilton by the imposition and undue influence of Bruce Dickerson Stevens and is for this reason void.

"5. A direct conflict of interest existed on the part of petitioner James J. Arditto throughout the period he purported or assumed to act for T. Marie Dunbar Chilton between her interests and the interests of Bruce Dickerson Stevens. For this reason petitioner James J. Arditto has no valid contract of employment with Mrs. Chilton or her Estate and is not entitled to be paid any amount from her Estate for his alleged services."

Petitioner objected to Findings 2, 4 to 14, and 16 to 27, and he requested, in addition, certain special findings, which findings were not made by the court. The objections to Findings 2, 4 to 6, 11 to 14, 16 to 19, and 21 to 24 are trivial and are either immaterial or irrelevant to the trial court's decision. Finding 7 is supported by evidence which petitioner admits, and his objection is that the finding fails to mention that he did

not receive a copy of the reporter's transcript of the proceedings in which the conservator of the estate was appointed until 28 October 1968 and therefore could not have made before that date an independent evaluation of the findings in those proceedings.

Finding 8 is supported by petitioner's own admission that he did not *independently* investigate Stevens' background. His objection to the finding is based on his testimony that he reviewed a detective's report and the reporter's transcript of the proceedings in which the conservator of the estate was appointed. The objection is not well taken, and we construe the finding to refer to an independent investigation.

All but the last sentence of Finding 9 was stipulated by the parties to be true and, in addition, was so found in another proceeding; in view of Findings 10 and 27, the last sentence of Finding 9 is immaterial.

Findings 10 and 27 are supported by the testimony of Dr. Eric H. Marcus, a psychiatrist who examined Mrs. Chilton. No other expert testimony was introduced on the subject of Mrs. Chilton's competency to contract with petitioner.

Finding 20 is at odds with petitioner's testimony, the only evidence directly relating to whether such advice was given. However, the trial court could have disbelieved petitioner, and, in any event, the evidence was uncontradicted that petitioner did not draft a new will for Mrs. Chilton's signature at any time prior or subsequent to her marriage to Stevens.

██ The real issue in this case is disclosed by petitioner's objection to Findings 25 and 26:

"The evidence in this record is uncontradicted that 'between June 20, 1968, and February 5, 1969,' Petitioner Arditto devoted about 400 hours solely for the benefit of Mrs. Chilton and at her request and that he did many things for the benefit of Mrs. Chilton . . ."

In essence, petitioner claims that the evidence established that his services were of benefit to Mrs. Chilton and rendered in her interest. We have concluded there was ample evidence to support the trial court's finding that petitioner was in fact working for the benefit of Stevens and that because Stevens' interests were inimical to the best interests of Mrs. Chilton, petitioner was not representing Mrs. Chilton's interests at all. All the "benefits" to Mrs. Chilton and her estate which petitioner claims to have provided are consistent with his representation of the interests of Stevens. Stevens, as the prospective and putative husband of Mrs. Chilton, would be interested in those services which would augment the value of the estate, such as the recovery of loans and the objection to awards to attorneys.

He might also be interested in obtaining a definite weekly allowance and in obtaining a new car to drive. The fact that no attempt was made to terminate the conservatorship of the estate or to move to Nevada might well have represented a choice not to spend money on lost causes and invite costly litigation. Moreover, any decision that Stevens would take only $50,000 under a new will and would administer a trust for the disposition of the remainder of the $6,000,000 estate rather than take a greater amount by will or under the provisions of section 70 of the Probate Code could have represented a calculated judgment by petitioner and Stevens that to be too greedy would surely invite litigation which might result in no recovery whatever.

Petitioner's conduct strongly pointed in the direction of petitioner's representation of Stevens' interests and not those of Mrs. Chilton. Petitioner never sought court approval of his representation of Mrs. Chilton. He was engaged to "represent" her by Stevens and a friend. He knew Stevens had designs on Mrs. Chilton's estate and had unduly influenced her in the past for his own benefit. He did not advise Mrs. Chilton to terminate her association with Stevens, nor did he try to dissuade her from marriage. He did not discuss the subject of a pre-nuptial agreement with her. After her marriage he did not draw up a new will for her signature. He did not disclose the marriage to the conservator of the estate or to the court, and on one occasion he misrepresented to the court that the new Mrs. Stevens was still Mrs. Chilton. Finally, in proceedings to annul the marriage, to appoint a conservator of the person for Mrs. Chilton, and to enjoin Stevens from contacting Mrs. Chilton, petitioner appeared on behalf of Stevens.

Petitioner's argument is, in essence, that until Mrs. Chilton was adjudicated incompetent or had a conservator of her person appointed it was not his duty, as a representative of her interests, to interfere in her relations with Stevens, even if it were clear that the latter was after her money. Petitioner contends that if Mrs. Chilton, at 85 years of age, wished to marry and leave all or part of her estate to a designing person in exchange for his attentions rather than to distant relatives whom she did not like, that was her business and not that of her attorney. Further, why should not her attorney fight against the distant relatives (who like Stevens are only interested in her money) and for Stevens (who at least gives Mrs. Chilton attention) if that is what Mrs. Chilton desired?

As an abstract proposition, between conniving and unfeeling relatives of an elderly person and conniving and attentive interlopers, one might decide that the latter are more worthy beneficiaries of the estate than the former. In such case an attorney could be said to be representing the

interests of that person in helping him or her to confer the benefit of the estate on the attentive interloper. But here we do not have such a case, because the findings in the proceeding to appoint the conservator of the estate, of which petitioner was well aware when he undertook to represent Mrs. Chilton, disclosed that Stevens had insinuated himself into Mrs. Chilton's good graces and turned her against others through fraud and undue influence. Because of this event, the furtherance of Mrs. Chilton's expressed wish to benefit Stevens cannot be regarded as action in her interests. It must be regarded, as it was regarded by the trial court, as action in Stevens' interests.

■ Since petitioner in fact represented Stevens and not Mrs. Chilton, he is not entitled to recover for services which may have incidentally benefited Mrs. Chilton's estate, especially where, as here, petitioner's "services" compelled the expense of remedial actions, namely those to annul the marriage and to prevent Stevens from contacting Mrs. Chilton. The trial court correctly concluded that petitioner rendered no services of value to Mrs. Chilton or her estate, even if, as petitioner avers, some of his activities brought money into the estate or saved it expense. Because petitioner had a conflict of interest and rendered no services of value to Mrs. Chilton or her estate, the trial court did not err in refusing to make findings on the value of the particular services which petitioner claims to have rendered.

In *Estate of Moore,* 258 Cal.App.2d 458 [65 Cal.Rptr. 831], where we approved an award for services to one who successfully initiated care-taker proceedings even though he himself had not been appointed care-taker, we said: "Appellant foresees great danger in estates being depleted by volunteers and interlopers who contribute no services of value if . . . petitions for compensation are allowed. We think a sufficient answer is that petitioners for fees from an estate must convince the court—which in most instances will have firsthand knowledge of the services performed— that they have rendered services of value in order to collect." (*Id.* at p. 464.) In the instant case petitioner is such a volunteer and he failed to convince the trial court that he performed services of value for the benefit of the conservatee.

The order denying fees for services is affirmed.