Filed 11/25/14  Conservatorship of Mazzocco CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Conservatorship of the Person of DAVID E. MAZZOCCO. | |
| MICHELE MAZZOCCO, | E057485 |
| Petitioner and Appellant, | (Super.Ct.No. INP10000641) |
| v. | OPINION |
| ALEXIS MAZZOCCO et al., | |
| Objectors and Respondents. | |

APPEAL from the Superior Court of Riverside County.  James A. Cox, Judge.
Affirmed.

Best Best & Krieger and G. Henry Welles for Petitioner and Appellant.

Ward & Ward, Alexandra S. Ward; Swan, Carpenter, Wallis & McKenzie and

Kevin McKenzie for Objector and Respondent Alexis Mazzocco.

No appearance for Objector and Respondent Kenneth Jenkins.

This case involves an issue of attorney's fees in a conservatorship matter.

Michele Mazzocco objected to two conservatorship petitions related to her uncle.

1

Subsequently, Michele Mazzocco sought an award of attorney's fees. The probate court denied the request for attorney's fees because it concluded the Probate Code did not authorize the requested award. Michele Mazzocco contends the probate court erred by denying her request because the court was authorized to award her attorney's fees. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

David Mazzocco (Conservatee) has assets worth millions of dollars. In 2010, Conservatee was 88 years old. Conservatee suffers from moderate to severe dementia. Conservatee is a widower and has no children; however, he has five nieces and nephews. For 15 years, Conservatee lived with his companion, Betsy Tworoger (Companion). One of Conservatee's nieces, Alexis Mazzocco (Trustee) (1) is Conservatee's health care agent, under Conservatee's Advance Health Care Directive; (2) is the successor trustee of Conservatee's trust, following Conservatee's resignation as trustee; (3) is the primary and possibly sole contingent beneficiary of Conservatee's trust; and (4) has Conservatee's power of attorney.

In late July 2010 Conservatee suffered a heart attack. In August 2010, Conservatee had heart surgery. The effects of Conservatee's dementia accelerated following the heart attack. In September 2010, Trustee moved Conservatee from the home he shared with Companion to a memory care facility. The facility is a "restricted . . . secure . . . facility." Trustee believed Conservatee needed to be placed in the facility because (1) Conservatee's doctor advised such a placement, and (2) Companion

2

interfered with home healthcare providers who were caring for Conservatee in his home.

On November 12, 2010, Companion petitioned the probate court to appoint a conservator for Conservatee's person. Companion argued Conservatee had expressed a desire to live in his home until his death, and to not reside in a care facility. Companion asserted Conservatee's best interests would be served by returning Conservatee to his home, where he could reside with Companion. Companion asserted a conservatorship was necessary because Conservatee "is financially incapable and has money or property that requires management or protection."

Companion asserted Trustee could not be trusted to handle Conservatee's assets because (1) Trustee's son was living in Conservatee's Oregon condominium; (2) Trustee's son was driving Conservatee's expensive cars; and (3) Trustee was not using Conservatee's money to provide the best care for Conservatee. Companion requested Kenneth Jenkins (Jenkins) be appointed conservator.

On November 17, 2010, Trustee objected to Companion's petition and petitioned the probate court to appoint a conservator for Conservatee's person. Trustee asserted that Conservatee's placement in a restricted and secure facility was necessary per the advice of Conservatee's doctor. Trustee asserted that Conservatee would be at risk of harm if returned to his home to reside with Companion because (1) Companion previously interfered with Conservatee's in-home caregivers, and (2) Companion was attempting to isolate Conservatee. Trustee requested she (Trustee) be appointed conservator of the person.

3

Michele Mazzocco (Niece) is another of Conservatee's nieces. On November 30, 2010, Niece objected to Companion's petition and Trustee's subsequent petition. Niece objected to Trustee's subsequent petition because Niece believed Trustee was attempting to isolate Conservatee in the secure facility, in order to secure Trustee's role as the sole beneficiary of Conservatee's trust. Niece objected to Companion's petition because Niece believed Companion wanted Conservatee returned to his home so Companion could exert influence and control over Conservatee and continue to reside in Conservatee's house.

Niece asserted Conservatee needed a conservatorship not just of the person, but also of his estate. Niece argued that Conservatee's best interests were not served by residing in the secure memory facility because Conservatee was being isolated from his family. Niece tried to contact Conservatee at the facility, but was informed Trustee forbade such contact. Niece alleged Conservatee had the financial resources to continue residing at his home with in-home care.

Further, Niece asserted Trustee had a conflict of interest in placing Conservatee in the secure facility because Trustee, as the sole beneficiary of Conservatee's trust, had an interest in minimizing the funds spent on Conservatee's healthcare. Niece asserted Trustee had placed Conservatee in a "mediocre locked facility," rather than provide more expensive in-home care, in an attempt to save funds for her own future use. Niece argued Trustee should not have control over Conservatee's living arrangements due to Trustee's conflict of interest.

4

Niece asserted Companion should be removed from Conservatee's home, and that Companion's visitation with Conservatee should be evaluated by the conservator. Niece contended Companion's petition was brought to serve her own self-interest because Companion wanted to continue living in Conservatee's home and continue receiving gifts from Conservatee. Niece contended Companion interfered with Conservatee's home healthcare in an attempt to continue controlling Conservatee.

Niece argued that an independent conservator should be appointed over Conservatee's estate, in addition to Conservatee's person. Niece asserted the court should appoint Jenkins as conservator because Jenkins was an independent party.

In January 2011, the probate court appointed Jenkins as temporary conservator of the person. In April 2011, Companion dismissed her petition to appoint Jenkins as conservator of the person. Thus, only Trustee's petition and Niece's objection remained active in the case. In January 2012, the probate court appointed Jenkins as conservator of Conservatee's person, but did not make an appointment related to Conservatee's estate; the parties would only stipulate to Jenkins being conservator of the person. Conservatee was returned to his home, and Companion was removed from the home.

Niece petitioned the probate court for reimbursement of her attorney's fees from Conservatee's trust, due to her successfully establishing a conservatorship for Conservatee. Niece reasoned that, since Companion dismissed her petition, only Niece was advocating for Jenkins to be appointed conservator and for Conservatee to be returned to his home. Niece requested $12,050 in attorney's fees and $464.12 in

5

administrative costs be paid by Conservatee's trust. Niece asserted she should be awarded her attorney's fees pursuant to Probate Code section 2640.1.[1]

Section 2640.1, subdivision (a) provides, "If a person has petitioned for the appointment of a particular conservator and another conservator was appointed while the petition was pending, but not before the expiration of 90 days from the issuance of letters, the person who petitioned for the appointment of a conservator but was not appointed and that person's attorney may petition the court for an order fixing and allowing compensation and reimbursement of costs, provided that the court determines that the petition was filed in the best interests of the conservatee."

Trustee objected to Niece's petition for attorney's fees and costs. Trustee asserted she (Trustee) was the sole petitioner in the case, after Companion's petition was dismissed. Trustee argued Niece was an objector, not a petitioner. Therefore, Trustee reasoned Niece could not be awarded attorney's fees and costs because (1) Niece was not a petitioner, and (2) Niece did not petition for the appointment of a conservator, who ultimately was not appointed, as required by section 2640.1. Trustee argued there was no legal authority for awarding attorney's fees and costs to Niece.

Niece replied to Trustee's objection. Niece reasserted that she was the only person seeking to have Jenkins appointed as conservator and that she was successful in that endeavor. Niece argued that she was entitled to an award of attorney's fees because Conservatee benefitted from Niece's actions. Niece asserted section 2640.1 authorizes

---

[1] All further statutory references are to the Probate Code unless otherwise indicated.

6

an award of attorney's fees in cases where a person "petitions for appointment of a conservator and successfully obtains appointment of a conservator." Niece argued that, in her objection, she requested affirmative relief, such as the appointment of Jenkins, and therefore, Niece was effectively a petitioner in the case. Niece asserted that California's liberal pleading rule should cause her "objection" to be considered a "petition," since the title of "objection" does not control the issue. Niece argued that she should not be penalized for electing to not file a duplicative "petition," which would have requested the same actions as her "objection." Additionally, Niece invoked the public policy of giving an incentive for people to protect elders.

Trustee asserted Niece's interpretation of the word "petition" was "grossly overbroad," because it eliminated the statute's (§ 2640.1) limiting language. Trustee again asserted Niece only filed an objection and therefore was not a petitioner. Trustee contended a "petitioner" was a person who filed a Petition for Appointment of Probate Conservator, which is a specific Judicial Council form.

In a reply, Niece asserted the probate court has equitable authority to award attorney's fees in cases where there is not statutory authority for such an award. Niece argued that her actions substantially benefited Conservatee and therefore she could have her attorney's fees awarded.

The probate court held a hearing on the attorney's fees issue. The court issued a tentative opinion reflecting Niece's actions were valuable, but that her attorneys should be paid by Niece rather than Conservatee's trust. The court explained that it rejected the equity argument because the primary equity case relied upon by Niece, *In re Moore's*

7

*Estate* (1968) 258 Cal.App.2d 458, involved a petitioner who prevailed on part, but not all of his case. The court explained that a partially successful petition was a key component to an equitable award of attorney's fees. Niece asserted the key component was whether the action significantly benefited the conservatee.

The probate court explained that the case law upon which Niece was relying predated the creation of section 2640.1. The court explained that section 2640.1 superseded the *Moore* case. The probate court explained, "[W]hat my fear is that even though I'm sympathetic with your client's position, if I started allowing fees to everybody who came in and objected to a conservatorship, that is certainly not equitable to the conservatee to allow anybody that comes in that wants to be heard on [a] conservatorship, and comes in with their attorney, and say[s], 'Well, now as equity you need to pay me.' And so out of some poor old conservatee's pocket they're paying for all the objectors and people who participate for their fees, and I think that's why the legislature limited it in their code section."

Niece asserted the award of attorney's fees would be limited to cases where the action benefitted the conservatee and was brought in good faith. Niece further asserted that her objection was essentially a petition since she requested specific relief. The trial court concluded, "[A]s much as I would like to order the attorney's fees, I don't believe that it's proper for me to do so the way the code sections are reading or read. [¶] I don't think either of the cases, *Cornelius* or *Moore*, overcome the limitations that the [L]egislature set in the statute, and the [L]egislature has every authority to limit the court, and I can understand the reasoning why they've done it. I'd like to see you paid,

but I think you're going to have to ask your client to pay those fees and not the estate."
The court denied Niece's request for attorney's fees and costs.

## DISCUSSION

### A.    CONTENTIONS

In Niece's appellant's opening brief she contends the probate court had equitable authority to award attorney's fees.  Niece contends she incurred attorney's fees due to actions that were executed in good faith, and that served Conservatee's best interests. Therefore, Niece contends the probate court erred by denying her request for fees and costs.  Trustee appears to agree the probate court has equitable authority to award attorney's fees, but asserts Niece does not meet the criteria for an equitable award of attorney's fees.  In Niece's reply, she asserts she meets the criteria for an equitable award of attorney's fees pursuant to the "common fund" doctrine.

In the instant case, the probate court concluded attorney's fees could not be awarded because the statute and cases provided by Niece did not support such an award in this case.  We review a probate court's legal conclusion regarding the basis, or lack of basis, for an award of attorney's fees de novo, because the issue is a question of law. (*Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 923; *Ramon v. County of Santa Clara* (2009) 173 Cal.App.4th 915, 920-921.)

### B.    SECTION 2640.1

Before addressing the issues of general equity and the common fund doctrine, we address section 2640.1, because that section was the focus of the probate court's reasoning.  The language of section 2640.1 is set forth *ante*, but we present it again here

9

for ease of reference. Section 2640.1, subdivision (a) provides: "If a person has petitioned for the appointment of a particular conservator and another conservator was appointed while the petition was pending, but not before the expiration of 90 days from the issuance of letters, the person who petitioned for the appointment of a conservator but was not appointed and that person's attorney may petition the court for an order fixing and allowing compensation and reimbursement of costs, provided that the court determines that the petition was filed in the best interests of the conservatee."

A "'[p]etition' includes an application or request in the nature of a petition." (§ 1430.) The foregoing definition of "petition" could, arguably, include Niece's objection wherein she made specific requests regarding the appointment of particular conservator. While labeled "objection," the document could be in the nature of a petition due to the request for a specific conservator to be appointed. Therefore, we will assume, without deciding, that Niece's objection was a "petition."

Assuming that Niece's filing qualified as a "petition," in order to receive an award of attorney's fees under section 2640.1, Niece would need to show (1) she petitioned for the appointment of a particular conservator; and (2) while her petition was pending, a different conservator was appointed. (§ 2640.1, subd. (a).)

Assuming Niece filed a "petition," her request for attorney's fees and costs under section 2640.1 would fail because Niece has not shown she unsuccessfully petitioned for the appointment of a conservator, rather, Niece was successful—Jenkins was appointed the conservator of the person. A different conservator was not appointed. Niece was unsuccessful on the conservator of the estate portion of her request, but a

10

different conservator was not appointed as conservator of the estate; rather, no one was appointed conservator of the estate. Therefore, Niece's claim would also fail in that regard. Under section 2640.1, assuming Niece filed a petition, she cannot receive an award of attorney's fees because a different conservator from the one she wanted was not appointed.

C.    COMMON FUND DOCTRINE

We now turn to the common fund doctrine. Niece asserts her attorney's fees should be paid by Conservatee's trust pursuant to the common fund doctrine.

Typically, attorney's fees cannot be awarded unless specifically provided for by statute or agreed to by the parties. (Code Civ. Proc., § 1021.) However, there are equitable exceptions to this rule. (*Serrano v. Priest* (1977) 20 Cal.3d 25, 34-35.) One of the exceptions is known as the "common fund" doctrine. The doctrine is well established: "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund. [Citations.]" (*Id.* at p. 34.) One of the reasons for the common fund award of attorney's fees is fairness to the successful litigant who might otherwise receive no benefit from the common fund because her share of the common fund is consumed by the expense of attorney's fees. (*In re Stauffer's Estate* (1959) 53 Cal.2d 124, 132.) In other words, the common fund doctrine prevents the situation where 10 people have a common interest in a fund, one person successfully sues to protect that fund, but that successful litigant ends up with no money because all the money awarded

11

from that fund is spent on attorney's fees, while the nine other people who did not sue are free to enjoy their money from the fund.

Niece's reliance on the common fund doctrine is not persuasive because there is no communal sharing of Conservatee's trust. We do not have the trust documents in the record; however, we gather from the documents about the trust that it is a living trust. The current sole beneficiary is Conservatee. The sole contingent beneficiary is Trustee. Trustee's interest in the money will not vest until Conservatee's death. (See *In re Estate of Giraldin* (2012) 55 Cal.4th 1058, 1072 ["the beneficiary 'cannot be accorded all the rights of a vested beneficiary before the death of the trustor [i.e., the settlor]'"].)

Thus, from what we can gather from the documents discussing Conservatee's trust (without seeing the actual trust), the money Niece protected can only be used to benefit Conservatee. Arguably, all the money could be spent on Conservatee's healthcare, leaving nothing for Trustee. Therefore, there is no communal fund. Niece protected Conservatee's assets—not assets belonging to multiple people. If Conservatee passes away, then any remaining assets will benefit only Trustee. Since the communal element of the common fund doctrine is not met because there is only a single beneficiary at any given time, we find Niece's reliance on the common fund doctrine to be unpersuasive.

D.    *MOORE, CHILTON,* AND *CORNELIUS*

1.    *CONTENTION*

Niece contends her attorney's fees should be paid because she litigated in good faith in order to serve Conservatee's best interests. Niece cites three cases to support

her position:  (1) *In re Moore's Estate* (1968) 258 Cal.App.2d 458 (*Moore*);

(2) *Conservatorship of Chilton* (1970) 8 Cal.App.3d 34 (*Chilton*); and

(3) *Conservatorship of Estate of Cornelius* (2011) 200 Cal.App.4th 1198 (*Cornelius*).

We examine each case in turn in order to understand the rule upon which Niece is

relying.

### 2.    *MOORE*

In *Moore*, Dr. Eugene P. Mathias, Moore's friend and physician, petitioned to be

appointed as guardian of Moore's person and for Bank of America to be appointed as

guardian of Moore's estate.  (*Moore*, *supra*, 258 Cal.App.2d at p. 460.)  Two other

people, Moses and Yvonne Rogers, petitioned to be appointed conservators of Moore's

person and estate.  After a hearing, Moses Rogers was appointed conservator of

Moore's person and Bank of America was appointed conservator of Moore's estate.

Mathias's petition for guardianship was denied.  (*Ibid.*)  Mathias sought attorney's fees,

and the probate court ordered Bank of America, as conservator of the estate, "to pay

specified amounts."  (*Ibid.*)

On appeal, Bank of America argued that an unsuccessful petitioner cannot be

compensated for services rendered to the estate.  (*Moore*, *supra*, 258 Cal.App.2d at pp.

460-461.)  The appellate court accepted the Bank's major premise that an unsuccessful

petitioner typically cannot be awarded attorney's fees, but questioned whether that rule

still applies when the unsuccessful petitioner caused "substantial benefits [to] accrue[]"

to the conservatee.  (*Id.* at pp. 461-462.)

The appellate court identified the issue as, "whether in the absence of statutory authorization, one who in good faith initiates caretaker proceedings in which a guardian or conservator other than the initiator is appointed may be awarded his costs and counsel fees." (*Moore*, *supra*, 258 Cal.App.2d at p. 462.) The appellate court found the Probate Code, at that time, did not authorize fees for unsuccessful petitioners; it only authorized fees for successful petitioners. (*Ibid.*) However, the court found the appellant had performed a valuable service "by notifying the court of the disabled's condition and need for protection." (*Ibid.*)

The appellate court turned to principles of equity to determine if attorney's fees could be awarded. (*Moore*, *supra*, 258 Cal.App.2d at p. 463.) The court applied the "general equitable rule permitting one who has protected, preserved, or increased a fund for the benefit of numerous parties, to be awarded compensation out of the fund for costs and counsel fees." The appellate court then explained the "common fund" doctrine (*ibid*); we have explained the doctrine *ante*. The court explained that due to Mathias's actions, "a fund in excess of $200,000 was brought under judicial control and safeguarded from possible dissipation and neglect. In a very real sense his action preserved a fund for the benefit of the conservatee and her heirs." (*Id.* at pp. 463-464.)

Thus, *Moore* discusses whether an unsuccessful litigant who has indirectly assisted in preserving a common fund may receive attorney's fees from that common fund. (*Moore*, *supra*, 258 Cal.App.2d at pp. 463-464.) As the probate court in the instant case explained, the resolution of this issue has been codified in section 2640.1, which provides that if a person petitioned for the appointment of a particular

14

conservator, but a different conservator was appointed while that petition was pending, then the unsuccessful petitioner may seek attorney's fees if "the court determines that the petition was filed in the best interests of the conservatee." *Moore* is a case from 1968. Section 2640.1 was added to the Probate Code in 1995. (Assem. Bill No. 1466 (1995-96 Reg. Sess.) § 1.) Therefore, the probate court in the instant case could properly read section 2640.1 as codifying this holding in *Moore*, since (1) the statute was added after the issuance of the *Moore* opinion, and (2) the statute speaks directly to the issue and resolution in *Moore*.

We have explained *ante* why section 2640.1 does not apply in this case. Namely, it does not apply because a different conservator was not appointed. In terms of the person, the conservator Niece wanted was appointed. In terms of the estate, a conservator was not appointed at all. Therefore, section 2640.1 does not apply in this case.

We have also explained why the common fund doctrine does not apply in this case. Notably, in *Moore*, the court found Mathias's actions preserved a fund that would benefit "the conservatee and her heirs." (*Moore*, *supra*, 258 Cal.App.2d at p. 464.) In the instant case, there is, based upon what we gather about the trust, a single contingent beneficiary whose interest in the assets has not vested. Therefore, there is not a communal interest in the money. At any point, the money can only benefit a single person. It will benefit Conservatee, and upon his death, it will benefit Trustee, assuming any assets are left at that point.

15

Based upon our discussions *ante*, *Moore* is not applicable in this case because (1) a different conservator was not appointed, and (2) there is not a communal aspect to the fund that was preserved. Therefore, we find Niece's reliance on *Moore* to be unpersuasive.

### 3. *CHILTON*

The second case Niece relies upon is *Chilton*. In *Chilton*, the probate court refused to award additional attorney's fees to an attorney (Arditto) who claimed he provided services to the conservatee, T. Marie Chilton. (*Chilton*, *supra*, 8 Cal.App.3d at p. 36.) Chilton was "under the domination and undue influence of" Bruce Dickerson Stevens (Stevens). (*Ibid.*) Stevens introduced Arditto to Chilton. After the three met, Arditto agreed to attempt to terminate the existing conservatorship over Chilton's estate. Arditto drafted a retainer agreement purporting to retain him as Chilton's attorney; however, Chilton did not have the capacity to enter into a contract. (*Id.* at pp. 36-37.) Arditto took actions, supposedly on behalf of Chilton. However, Arditto's actions purportedly on behalf of Chilton were "of no value to Mrs. Chilton and her Estate" and "resulted in great and unnecessary expense to the said Estate." (*Id.* at pp. 39-40.) At the same time, Arditto was representing Stevens in three lawsuits. (*Id.* at p. 39.) During the relevant time period, Stevens purportedly married Chilton. (*Id.* at p. 38.)

At the probate court, Arditto argued he should be awarded attorney's fees from Chilton's estate. (*Chilton*, *supra*, 8 Cal.App.3d at p. 36.) The probate court refused to award Arditto fees in addition to the $1,000 fee he had already been awarded for services to Chilton, so he appealed. (*Ibid.*) Arditto argued that he spent 400 hours

working "solely for the benefit of Mrs. Chilton" and performed various tasks at her request.  (*Id.* at p. 41.)  The appellate court found Arditto actually represented Stevens, not Chilton, and therefore, was "not entitled to recover for services which may have incidentally benefited Mrs. Chilton's estate."  (*Id.* at p. 43.)

The court then explained that, if it assumed Arditto was correct in asserting he "brought money into the estate or saved it expense," then he still could not be awarded money under *Moore* because Arditto's services did not benefit Chilton.  (*Chilton*, *supra*, 8 Cal.App.3d at p. 43.)

Thus, in *Chilton*, the attorney could not be awarded fees because (1) he did not actually have a contract with the client in part because he was representing a person with interests adverse to the purported client, and (2) even if he helped to preserve a common fund, as in *Moore*, he did not act to benefit the conservatee.  We have explained *ante*, why the *Moore* rule is not persuasive in this case.  Accordingly, we find Niece's reliance on *Chilton* unpersuasive, since it is essentially a repeat of the rule from *Moore*.

### 4.    *CORNELIUS*

The third case relied upon by Niece is *Cornelius*.  In *Cornelius*, a daughter sought temporary and permanent conservatorships for her father.  A temporary conservatorship was established for six months.  The father objected to the conservatorship, and the daughter withdrew her petition for a permanent conservatorship.  The probate court awarded compensation and reimbursement to (1) the lawyers for the temporary conservator, (2) the lawyer who represented daughter

17

in seeking a restraining order against a person who was allegedly taking advantage of the father, (3) the temporary conservator of the person and estate of the father, (4) the daughter for her costs and travel expenses, and (5) the nurses and caregivers for the father.  The awards were to be paid from the father's estate.  The father appealed the award.  (*Cornelius*, *supra*, 200 Cal.App.4th at pp. 1200, 1203-1204.)

On appeal, the father argued that the Probate Code sections that authorize payment to a conservator (§ 2641) and the conservator's attorneys (§ 2642) do not apply to temporary conservatorships.  (*Cornelius*, *supra*, 200 Cal.App.4th at pp. 1200, 1204.) Section 2642, subdivision (a), provides in relevant part, "[A]n attorney who has rendered legal services to the . . . conservator of the person . . . may petition the court for an order fixing and allowing compensation for such services rendered . . . ."  The appellate court found there was nothing in the statute that limited the award of fees to permanent conservatorships, i.e., fees could also be awarded in situations where only a temporary conservatorship is established.  The court made a similar conclusion about section 2641.  (*Cornelius*, at p. 1204.)

The appellate court then analogized the case to *Moore* in that the father received "'substantial benefits'" from the temporary conservatorship, even if a permanent conservatorship was not established.  (*Cornelius*, *supra*, 200 Cal.App.4th at pp. 1204-1205.)  The court explained that the failure to establish a permanent conservatorship does not mean the temporary conservatorship was unnecessary; rather, what the court must consider is whether the conservatee benefitted from the temporary conservatorship and the petitioner acted in good faith—the court should not be focused on whether a

18

permanent conservatorship was established.  (*Id.* at pp. 1205-1206.)  The appellate court found the evidence supported the findings "that the temporary conservatorship was established in good faith and in the best interests of the [father]."  (*Id.* at p. 1207.)  The appellate court affirmed the award of fees.  (*Id.* at p. 1208.)

In sum, section 2642, subdivision (a) authorizes fees to be paid to "an attorney who has rendered legal services to the . . . conservator of the person."  *Cornelius* provides that if a temporary conservatorship is established, but a permanent conservatorship never comes to fruition, then the attorney who provided legal services to the conservator of the person may still collect legal fees, as long as the temporary conservatorship was sought in good faith and served the best interests of the conservatee.  (*Cornelius*, *supra*, 200 Cal.App.4th at p. 1207.)

The direct holding of *Cornelius* is not applicable in this case because a permanent conservatorship of the person was established for Conservatee.

### 5.     *NIECE'S CONTENTION*

Niece asserts that the common thread in *Moore*, *Chilton*, *and Cornelius* is that fees may be awarded where expenses were incurred in good faith and to serve the best interests of the conservatee.  Thus, all that a person would need to show in order to win attorney's fees is that they took action in a probate case in good faith and to serve the conservatee's best interests.  We reject Niece's reading of the three cases.

When *Moore*, *Chilton*, *and Cornelius* are read together, they create the rule that a person can be awarded attorney's fees if they indirectly, rather than directly, fall within an established category for an award of fees, and the person acted with good faith and in

the conservatee's best interests. (See *Moore*, *supra*, 258 Cal.App.2d at p. 464 ["the services have been indirectly rendered"].) For example, in *Moore*, Mathias could not directly collect attorney's fees under the common fund doctrine because he indirectly (rather than directly) assisted in preserving the fund, in that his petition for guardianship was unsuccessful, but he was the person responsible for initially bringing the matter to the court's attention. (*Id*. at pp. 463-464.) Since Mathias acted in good faith and to serve the best interests of the conservatee, he could collect under the common fund doctrine, even though he was indirectly responsible for preserving the common fund. Thus, the application of the doctrine to him was indirect.

In *Cornelius*, the daughter and others collected under sections 2641 and 2642, but to the extent they could not directly collect under those statutes because the conservatorship was only temporary, the court explained they could indirectly collect under those statutes because the temporary conservatorship was brought in good faith and to serve the best interests of the conservatee. (*Cornelius*, *supra*, 200 Cal.App.4th at pp. 1204-1207.)

In *Chilton*, the attorney purportedly had a retainer agreement with the conservatee and had spent 400 hours working for her. (*Chilton*, *supra*, 8 Cal.App.3d at pp. 37, 41.) The court rejected the contract aspect of the attorney's argument, and rejected the common fund portion of the attorney's argument because the benefit element was not shown. (*Id.* at p. 43.)

In sum, the rule to take away from reading *Moore*, *Chilton*, *and Cornelius*, is that there must be some basis either in law or equity for collecting attorney's fees, and if that

20

basis applies indirectly, and the person seeking attorney's fees acted in good faith and to serve the best interests of the conservatee, then attorney's fees may be awarded.

For example, in the instant case, section 2642, subdivision (a), provides, "an attorney who has rendered legal services to the . . . conservator of the person . . . may petition the court for an order fixing and allowing compensation for such services rendered to that time." Arguably, this statute could indirectly apply to Niece's attorney. It was Niece's objection that requested Jenkins be appointed as conservator of the person. Ultimately, Jenkins was appointed conservator of the person. To the extent it could be found Niece's attorney rendered legal services to the conservator of the person by indirectly establishing the conservatorship of the person, then fees could be awarded indirectly under section 2642, if it were also found Niece acted in good faith and to benefit Conservatee.

The foregoing example is a hypothetical example because Niece did not raise this argument at the probate court or at this court. Rather, Niece focused primarily on the portions of *Moore*, *Chilton*, and *Cornelius* that require good faith and a benefit to the conservatee. In regard to the bases for awarding fees, as set forth *ante*, Niece relied upon the common fund doctrine and section 2640.1, neither of which applies in this case. Therefore, while Niece may have support for the argument that she acted in good faith and to benefit Conservatee, she did not identify a proper basis for the indirect award of fees. As set forth *ante*, section 2642 could provide a proper basis for the indirect award, but we cannot know for certain because the argument was not developed on this issue. As a result, Niece's reliance on *Moore*, *Chilton*, and *Cornelius* is not

persuasive because, while she may have acted in good faith and to benefit Conservatee, she has not identified a proper basis for the indirect award of attorney's fees.  (See generally *Estate of Sobol* (2014) 225 Cal.App.4th 771, 783 [issue not raised is forfeited].)

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
                 J.

We concur:

RICHLI
    Acting P. J.

KING
    J.